WILLIS, RESPONDENT, *v.* PILOT BUTTE MINING CO. ET AL., APPELLANTS.

(No. 4,542.)

(Submitted April 10, 1920.   Decided May 8, 1920.)

[190 Pac. 124.]

*Master and Servant—Death by Assault—Compensation Act— Constitution — Jurisdiction — Industrial Accident Board— Findings—Review.*

Master and Servant—Compensation Act—Appeal to Supreme Court— Trial *De Novo*—Unconstitutional Provision of Act.
1.   To the extent that section 22(d) of the Compensation Act (Chap. 96, Laws 1915) attempts to confer jurisdiction upon the supreme court to try *de novo*, in the sense that a case appealed to the district court from a justice's court is tried anew, a case appealed to it from the district court and brought into that court on appeal from an award made by the Industrial Accident Board, it is invalid as a violation of sections 2 and 3, Article VIII, Constitution.

Same—Appeal to District Court—Jurisdiction.
2.   *Held*, that while section 22(b) of the Compensation Act provides that on appeal to the district court from an award of the Industrial Accident Board the trial shall be *de novo*, the power thus given is that of review rather than that of retrial.

Same—Findings of District Court—When Conclusive.
3.   On appeal from an award made under the Compensation Act, after review by the district court, the supreme court will not reverse the findings of that court unless the evidence clearly preponderates against them.

On recovery of compensation under Workmen's Compensation Acts, where workman suffers injury from assault, see notes in L. R. A. 1916A, 306, and L. R. A. 1918E, 498.

Same—Death of Employee by Assault—When Injury Arising Out of Employment.

4.   *Held,* that while injuries received by an employee during a personal altercation with a co-worker, in no way connected with his duties, do not give rise to a claim for compensation under Chapter 96, Laws of 1915, where a mine foreman killed a station-tender in a fit of anger because deceased had signaled the engineer to hoist the cage upon which they were riding to the surface instead of to a certain level in the mine, the death arose out of the employment, and that therefore his widow was properly allowed compensation.

*Appeal from District Court, Silver Bow County; Joseph R. Jackson, Judge.*

PROCEEDINGS under the Workmen's Compensation Act by Martha Willis against the Pilot Butte Mining Company, employer, and the Aetna Life Insurance Company, insurer. Compensation was awarded by the Industrial Accident Board, the award affirmed by the district court, and from its judgment the employer and insurer appeal. Affirmed.

*Messrs. Frank & Gaines,* for Appellants, submitted a brief; *Mr. R. F. Gaines* argued the cause orally.

The burden was upon Martha Willis to show that the injury arose out of the employment. (*Union Sanitary etc. Co.* v. *Davis* (Ind. App.), 115 N. E. 676; *Ohio etc. Vault Co.* v. *Industrial Board,* 277 Ill. 96, 115 N. E. 149; *Wiggins* v. *Industrial Acc. Board,* 54 Mont. 335–342, Ann. Cas. 1918E, 1164, L. R. A. 1918F, 932, 170 Pac. 9.) "But the claimant fails if an inference favorable to him can only be arrived at by a guess; likewise when two or more conflicting inferences equally consistent with the facts arise from them." (*Ohio etc. Vault Co.* v. *Industrial Board, supra.*) The same rule is equally applicable to proceedings before the board. (Honnold on Workmen's Compensation, sec. 230, pp. 795, 796, and cases there cited.)

The weight of authority, both numerically and according to logical reasoning, is to the effect that injury due to assault is as a rule not compensable; the allowance of compensation is always the result of the existence of some one or more of sev-

eral well-recognized exceptions. Ordinarily assaults are not considered as either industrial accidents or as arising out of the employment as the latter phrase is construed. The instances of injuries flowing from assaults are always traceable either to assaults arising from ill will or out of unlawful conduct (which we will later denominate "Intentional Assaults"), or to assaults as a result of playfulness, skylarking or pranks. The "Intentional Assault" cases naturally include assaults both by fellow-employees and third persons.

The American cases, grouped as above suggested, are the following: "Intentional Assaults: Group A—Assaults by fellow-employees. Legend: (a) Recovery allowed. (d) Recovery denied: (a) *McNicol* v. *Patterson etc. Co.*, 215 Mass. 497, L. R. A. 1916A, 306, 102 N. E. 697; (a) *Cranney's Case*, 232 Mass. 149, 122 N. E. 266; (a) *Western Indemnity Co.* v. *Pillsbury*, 170 Cal. 686, 151 Pac. 398; (a) *San Bernardino* v. *Industrial Acc. Board*, 35 Cal. App. 33, 169 Pac. 255; (a) *Polar Ice & Fuel Co.* v. *Mulray* (Ind. App.), 119 N. E. 149; (a) *In re Heitz* v. *Ruppert*, 218 N. Y. 148, L. R. A. 1917A, 344, 112 N. E. 750; (a) *Carbone* v. *Loft*, 219 N. Y. 579, 114 N. E. 1062; (d) *Metropolitan etc. Co.* v. *Industrial Acc. Board* (Cal. App.), 182 Pac. 315; (d) *Union Sanitary Mfg. Co.* v. *Davis* (Ind. App.), 115 N. E. 676; (d) *Walther* v. *American Paper Co.*, 89 N. J. L. 732, 99 Atl. 263; (d) *Mountain Ice Co.* v. *McNeill*, 91 N. J. L. 528, 103 Atl. 184; (d) *Griffin* v. *Roberson & Son*, 176 App. Div. 6, 162 N. Y. Supp. 313; (d) *Stillwagon* v. *Callan Bros.*, 183 App. Div. 141, 170 N. Y. Supp. 677; (d) *Clark* v. *Clark*, 189 Mich. 652, 155 N. W. 507; (d) *Marshall* v. *Baker etc. Co.* (Mich.), 173 N. W. 191; (d) *Jacquemin* v. *Turner etc. Mfg. Co.*, 92 Conn. 382, 103 Atl. 115; (d) *Pierce* v. *Boyer etc. Coal Co.*, 99 Neb. 321, L. R. A. 1916D, 970, 156 N. W. 509; (a) *Pekin Cooperage Co.* v. *Industrial Com.*, 285 Ill. 31, 120 N. E. 530; (a) *Chicago, R. I. & P. Ry. Co.* v. *Industrial Com.*, 288 Ill. 126, 123 N. E. 278; (a) *Swift & Co.* v. *Industrial Com.*, 287 Ill. 564, 122 N. E. 796.)

Group B—Assaults by Third Persons: (a) *In re Reithel,* 222 Mass. 163, 109 N. E. 951; (a) *Hellman* v. *Manning etc. Co.,* 176 App. Div. 127, 162 N. Y. Supp. 335; (a) *State ex rel. Anseth* v. *District Court,* 134 Minn. 16, L. R. A. 1916F, 957, 158 N. W. 713; (a) *Chicago Dry Kiln Co.* v. *Industrial Board,* 276 Ill. 556, Ann. Cas. 1918B, 645, 114 N. E. 1009; (a) *Ohio etc. Vault Co.* v. *Industrial Com.,* 277 Ill. 96, 115 N. E. 149; (a) *Baum* v. *Industrial Com.,* 288 Ill. 516, 123 N. E. 625; (a) *Emerick* v. *Slavonian etc. Union* (N. J.), 108 Atl. 223; (d) *Harbroe's Case,* 223 Mass. 139, L. R. A. 1916D, 933, 111 N. E. 709; (d) *Muller* v. *Cohen,* 186 App. Div. 845, 174 N. Y. Supp. 736; (d) *State ex rel. Common School Dist.* v. *District Court,* 140 Minn. 470, 168 N. W. 555; (d) *Schmoll* v. *Weisbrod etc. Brewing Co.,* 89 N. J. L. 150, 97 Atl. 723.)

Assaults Committed in Play: (d) *Coronado Beach Co.* v. *Pillsbury,* 172 Cal. 682, L. R. A. 1916F, 1164, 158 Pac. 212; (d) *Fishering* v. *Pillsbury,* 172 Cal. 690, 158 Pac. 215; (d) *Hulley* v. *Moosbrugger,* 88 N. J. L. 161, L. R. A. 1916C, 1203, 95 Atl. 1007; (d) *Federal Rubber Mfg. Co.* v. *Havolic,* 162 Wis. 341, L. R. A. 1916D, 968, 156 N. W. 143; (d) *In re Moore,* 225 Mass. 258, 114 N. E. 204; (d) *Stuart* v. *Kansas City,* 102 Kan. 307, 563, 171 Pac. 913; (d) *Tarpper* v. *Weston etc. Co.,* 200 Mich. 275, 166 N. W. 857; (d) *De Filippis* v. *Falkenberg,* 170 App. Div. 153, 155 N. Y. Supp. 761; (a) *In re Loper* (Ind.), 116 N. E. 324; (a) *State ex rel. Johnson etc. Co.* v. *District Court,* 140 Minn. 75, 167 N. W. 283; (a) *Knopp* v. *American etc. Co.,* 186 Ill. App. 605.)

A consideration of this grouping of the cases discloses that the allowance or denial of recovery does not depend upon whether the assault be intentional or playful, or be committed by a fellow-employee or by a stranger to the work. The test, of course, is as defined in the *Wiggins Case, supra.* In all of the cases above listed, that the injury occurred in the *course of the employment* has been accepted as an established fact; in most of them there is express recognition that an assault may be an accident connected with industry; and in all of

them the question controlling was whether the assault, with its resulting injury, arose *"out of the employment."*

And in all cases of allowance of recovery the particular resulting injury has been shown to be, and been held to fall, fairly within one or more of several well recognized and clearly defined exceptions to the general rule that injuries resulting from assaults are not compensable. These exceptions are grounded upon the proposition that the particular conditions under which the employment is pursued, or the nature of the employment make the chance of an assault a risk peculiar to the work that the particular employee is called upon to perform. And it is most important to a correct understanding of the question presented to note that in the consideration of the applicability of any exception, it is the status of the applicant for compensation that is controlling, not the status of the one occasioning the injury.

The exceptions above mentioned are the following: (Class A:) The existence, with the knowledge of the employer, of working conditions or practices indulged in, which subject the employee to such a risk of assault as that it may be said to be reasonably incident to the work the injured employee is called upon to perform under the circumstances. (Class B:) The furthering of an employer's interests by superior servants in the line of their employment, as in the matter of enforcing discipline or obedience to rules of the employer; and in holding other employees to account for property of the employer intrusted to their care. (Class C:) Performing a character of service which may be said to invite the danger of assault,—as for instance, cashiers, paymasters, night watchmen and the like. (Class D:) Protection of the property of the employer from injury threatened by lawless acts, fires and the like.

*Mr. H. A. Tyvand,* for Respondent, submitted a brief and argued the cause orally.

The appellants have grouped assaults under two general heads, to-wit: 1. "Assaults committed in play," 2. "Intentional

assaults," which they subdivided into two heads, to-wit: (a) "Assaults by fellow-employees," (b) "Assaults by third persons." They then cover about forty pages of their brief on this classification or on the exceptions they present thereunder. By an examination of the facts in this case, it is clearly evident that this classification has no application, because this is a case of an assault by a master (vice-principal, Mr. Brooks, night foreman, a man who stands in the master's shoes) upon a servant. In this class of cases of assault by a vice-principal upon a servant, or *vice versa*, all the cases we have found have allowed compensation in favor of the persons assaulted. On the other hand, in not one of the cases cited by appellants where compensation was denied under the above heading, 2(a), is there a case of an assault by a vice-principal on a servant, or *vice versa*.

The evidence shows Willis was assaulted because he was station-tender at the mine, and not because he was Willis. The assault was not made by a personal enemy to avenge a personal wrong about a purely personal matter. From this it is apparent that Mr. Willis' injury arose out of the employment. When we take into consideration all the surrounding circumstances, the facts in the instant case are practically the same as those in the case of the *Western Indemnity Co.* v. *Pillsbury,* 170 Cal. 686, 151 Pac. 398, often known as the *Rudder Case.* The California Compensation Law is practically word for word the same as the Montana Compensation Law on the question before this court.

In the *Rudder Case,* the section foreman went to one of his employees, a section-hand, who was not doing his work in a proper way, took the shovel from Pappas' hand and showed him how to do the work, but Pappas continued to do the work in his same old way. In both of these cases (the Rudder and this case) the trouble was about the work of the employees, between foreman and employee under him. The foreman in each case was the aggressor. The two cases are as near alike as can be without being identically the same.

The *Rudder Case* is affirmed in *San Bernardino County* v. *Industrial Acc. Com.*, 35 Cal. App. 33, 169 Pac. 255, in which an employee was the aggressor and a foreman the injured party. (See, also, *Polar Ice etc. Co.* v. *Mulray* (Ind. App.), 119 N. E. 149.) The following are some of the cases similar to the one at bar, in each of which compensation was allowed: *Swift & Co.* v. *Industrial Com.*, 287 Ill. 564, 122 N. E. 796, where a foreman assaulted an employee, a pipe-fitter, for not obeying his orders; *Cranney's Case,* 232 Mass. 149, 122 N. E. 266, a case of an assault by a waiter on the head-waiter about orders which resulted in his discharge; *Carbone* v. *Loft,* 219 N. Y. 579, 114 N. E. 1062,—this is a case where two employees were arguing about their work. About three-quarters of an hour later, one of the employees assaulted the other; *McNicol's Case,* 215 Mass. 497, L. R. A. 1916A, 306, 102 N. E. 697, a case of one employee assaulting another employee; *Pekin Cooperage Co.* v. *Industrial Com.*, 285 Ill. 31, 120 N. E. 530, a case of assault of one employee upon another, because one employee took some barrel staves from another, which they were working with; *Chicago etc. Ry. Co.* v. *Industrial Com.*, 288 Ill. 126, 123 N. E. 278, a case of a locomotive boiler-washer being assaulted by his helper after the helper had been discharged.

The appellants contend that the cases of assault do not come under the compensation law unless it is a case coming under at least one of their four exceptions to their classification hereinbefore mentioned. In examining these four exceptions set up by the appellants we clearly see that the instant case easily comes within at least three of these exceptions, even though it is not necessary to come within any of these exceptions in order to recover compensation, because the cases coming under these exceptions are not the only cases where compensation is allowed. The question whether or not an injury (from a fortuitous event) arose out of the employment of a person depends upon about as many circumstances as there are cases arising. It is a question of fact for the industrial accident boards and·

courts to decide from the facts under the circumstances in each case whether or not the injury arose out of the employment.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

On March 20, 1916, W. A. Willis, while employed as station-tender for appellant mining company, was shot by Nathan Brooks, mine foreman for said company, and thereafter died. Willis was subject to the provisions of the Workmen's Compensation Act, and respondent, for herself and her minor child, filed with the Industrial Accident Board her proof of injury and death, and application for compensation. Two separate hearings were had before the board, and on August 30, 1919, award was made in accordance with the application. The company and its insurance carrier appealed to the district court of Silver Bow county, and, after a hearing, the court found in favor of respondent and entered judgment in accordance with the award made by the board. The matter is before us on an appeal from the judgment of the district court.

It was in the district court, and is here, conceded that the death of Willis resulted from an accident or fortuitous event arising in the course of his employment, and the only question presented is: Did the injuries resulting in the death of Willis arise "*out of*" his employment?

We are asked to try the case anew and, disregarding the [1] findings of the board and of the trial court, to determine the question so presented, as an original proceeding, on the record made in the district court and before the board, as provided in section 22(d) of the Compensation Act (Chapter 96, Laws of 1915), which section reads as follows: "Either the board, or the appellant [applicant], or any adversary party, if there be one, may appeal to the supreme court. * * * When any such cause is so appealed it * * * shall be tried anew by said supreme court upon the record made in said district court and before said board. * * *"

58 Mont.—3

It is urged that this court stands in the same position as a district court on an appeal from a justice's court and that the trial here is a trial *de novo.* But this cannot be. Section 2, Article VIII, of our Constitution, provides: "The supreme court, except as otherwise provided in this Constitution, shall have appellate jurisdiction only. * * * " And "shall have power * * * to issue and to hear and determine * * * such * * * original and remedial writs as may be necessary or proper to the complete exercise of its appellate jurisdiction." (Sec. 3, Article VIII.) It "shall have a general supervisory control over all inferior courts, under such regulations and limitations as may be prescribed by law" (section 2, Article VIII), and shall have power to issue, hear and determine the six original writs named in section 3 of Article VIII. "The provisions of this Constitution are mandatory and prohibitory, unless by express words they are declared to be otherwise." (Sec. 29, Article III, Constitution of Montana.)

In *In re Weston,* 28 Mont. 207, 72 Pac. 512, this court said: " 'The source of all power vested in the supreme court is the Constitution of the state, and in it must be found the measure of jurisdiction.' * * * The power to issue, hear, and determine the six original writs enumerated above marks the limit of the original jurisdiction of this court." It will be readily seen, therefore, that the legislature was without authority to grant to this court jurisdiction to try the cause "anew" as though the matter was originally before us, and, to the extent that section 22(d) of the Compensation Act attempts to confer such jurisdiction, it is unconstitutional. In the language of the opinion in the *Weston Case:* "The full measure of the relief which may be granted is a review of the decision of the lower court and a judgment of this court affirming, modifying, or reversing the decision. Further than this we cannot go."

Section 22(b) of the Act provides that, on an appeal to the district court from the judgment of the board, "the trial of the matter shall be *de nova* [*de novo*]," but further provides that "upon such trial the court shall determine whether or not

the board regularly pursued its authority, and whether or not the findings of the board ought to be sustained, and whether or not such findings are reasonable under all the circumstances of the case," and provides further, "The court may, upon the hearing, for good cause shown, permit additional evidence to be introduced, but, in the absence of such permission from the court, the cause shall be heard, on the record of the board as certified to the court by it"; and (c) "If the court shall find from such trial, as aforesaid, that the findings and conclusions of the board are not in accordance with either the facts or the law, or that they ought to be other or different than those made by the board, or that any finding and conclusion or any order, rule or requirement of the board is unreasonable, the court shall set aside such finding, conclusion, order, judgment, decree, rule, or requirement of said board, or shall modify or change the same as law and justice shall require, and the court shall also make and enter any finding, conclusion, order or judgment that shall be required, or shall be legal and proper in the premises."

As district courts are courts of original jurisdiction, it was [2] within the constitutional power of the legislature to provide that the trial in the district court shall be *de novo,* as indicated; but the power given the district court is that of review, rather than a trial anew. That this is true is emphasized by the provisions of section 20(h) that "no orders or decisions of the board shall be subject to collateral attack, and may be *reviewed or modified* only in the manner provided herein."

The district court of Silver Bow county followed the procedure outlined in the Act, and made findings "that the said Industrial Accident Board as far as it proceeded regularly, pursued its authority; that the findings of the said Industrial Accident Board ought to be sustained and that its findings are reasonable under all the circumstances of the case; that the accident to W. A. Willis, which resulted in his death, arose out of his employment for the Pilot Butte Mining Company, and therefore compensation should be awarded to the widow

of W.. A. Willis, Martha Willis, as per the provisions of the Workman's Compensation Act," and rendered judgment accordingly, without making any further findings in the premises. [3] Our duty, then, is but to determine whether the evidence before the board clearly preponderates against its findings, as adopted by the court; if not, we must affirm the judgment. The rule that the supreme court will not reverse the findings of the district court, except where the evidence clearly preponderates against them, is so well settled in this jurisdiction, as to hardly require repetition.

Willis was station-tender in appellant company's mine; Brooks, the night foreman with authority over Willis. Just prior to the shooting, Brooks visited Willis on the 2,600-foot level and communicated to him an order of the day foreman that he (Willis) should remain on shift until relieved. According to Brooks, an altercation arose concerning his action in discharging one Shannon, Willis accusing him of trying to "frame up on" him as, he contended, Brooks had done on Shannon. Brooks then ordered Willis to signal for the cage to be raised to the next level that he might make an inspection there. Willis gave some signal and entered the cage with Brooks, which he had a right to do. Whether Willis gave the correct signal which was misunderstood by the engineer, or whether he gave the signal to hoist to the surface, could not be ascertained. The cage continued to the surface, and, on leaving it, the two men immediately met in personal encounter. Who was the aggressor is not entirely clear; nor is the evidence satisfactory as to the cause of the trouble. According to Brooks' version of the affray, while he gives no satisfactory explanation for the act, "Willis attempted to grab me and get my lamp, which he finally did"; that he then broke away and ran for the office. On the other hand, Willis being advised that he could not live, made the following statement: "Since I am going to die, I want you to know just what happened. We were coming up on the cage together and, as we got off the cage on the surface, Brooks hit me on the jaw with his heavy

carbide lamp. I clinched him and got the lamp, but he broke away and I after him through the side door of the boiler-room, through into the engine-room. When I reached the front door of the engine-room I could not see him, and thought to myself I'd 'bunch it' [meaning quit]. So I started for the dry, and, just as I turned off the trail to leave his lamp on the step of the office, Brooks opened the door with a gun in his hand and aimed at me. I was startled at sight of the gun, but did not think he was going to 'blast' as he held the gun on me for fully a minute before he shot me. I backed toward the dry, and he followed and shot me again and was going to shoot the third time, when I said, 'Well, I guess you got me,' and I fell.'' Asked the question: "'Was there any other trouble?'' Willis replied: ''No trouble at all; he killed me for nothing; that's all.'' Two witnesses were present but saw little of the affray, and their testimony might easily corroborate the theory that either was the aggressor. After the shooting, Willis had a cut on his jaw, while Brooks had no mark on either his face or body. It is significant that, while Brooks ran to the office, Willis followed at a walk. This fact would seem to support his statement that he was but going to the dry to change his clothes; had he been intent on continuing the combat, it would seem that he would have sought to overtake Brooks on the way to the office.

The second hearing was held before the board some two years after the death of Willis and after Brooks had stood trial for the killing; while the first hearing was had before the trial and while Brooks would wish to make the circumstances as favorable to himself as possible. On this second hearing, Brooks still exhibited considerable heat on account of the fact that he was taken to the surface when he wanted to go to the next level, as shown by the following excerpt from his testimony: ''Q. Do you remember when you first saw him that morning? A. On the 2,600 when I went to make my inspection. Q. And then you both came up on the cage together?'' Without further question or suggestion, Brooks answered: ''We both came up

on the cage together. I had an inspection to make, and he took me on over. He had no business going up above. His business was to hoist rock, and he took me on top. I did not want to go on top." It might be reasonably inferred, taking the statements of the two men together, that Brooks was angered by the action of Willis in taking him "to the top" and thus disobeying his directions, and that the blow struck with the lamp was in the nature of punishment for that act of carelessness or disobedience, and that what took place thereafter was all a part of the same transaction, and the shooting was a sequence and a part of this quarrel over the work. This was the theory of the board when it found that "the possibility of quarrels was an existing fact, as evidenced by the act of the shift boss hitting him on the head with a heavy carbide lamp, apparently because of a mistake in taking the cage to the surface when it should have stopped at the 2,400-foot level," which finding is declared by the district court to be "reasonable."

The board also found that "the conversation about Shannon would naturally be the reply to the giving of this order [to remain on shift until relieved], as there is testimony to show that the men on the shift were more or less irritated at the discharging of some of their fellow-employees, including Shannon, by Mr. Brooks. Some significance is attached to this order by the exclamation of the day foreman, Mr. Little, at the time of the shooting. He seemed to immediately conclude that his order was the cause of it. * * * There is not a particle of evidence to show that there was any personal animosity between Mr. Brooks and Mr. Willis. In fact, all the evidence shows that Mr. Willis was a peaceably inclined man. * * * The irresistible inference is that this fatal quarrel arose from the work or employment in which Willis was engaged."

The difficulty in this and kindred cases arises from the fact that we must determine a question of fact rather than a proposition of law. No clear-cut rule is, or can be, laid down; each case must be decided on its own facts and attendant circumstances and forms no precedent for future decisions. "Previ-

ous decisions are illustrations of the way in which judges look at cases, and in that sense are useful and suggestive; but I think we ought to beware of allowing tests or guides which have been suggested by the courts in one set of circumstances, or in one class of cases, to be applied to other surroundings, and thus by degrees to substitute themselves for the words of the Act itself." (Per Lord Loreburn, L. C., *Blair* v. *Chilton,* 8 B. W. C. C. 607, 113 L. T. Rep. (n. s.) 514, affirmed B. W. C. C. 324, 30 T. L. Rep. 623; footnote 76, p. 73, Workman's Compensation Act, a Corpus Juris Treatise.) And the same jurist, in *Kitchenham* v. *Steamship Johannesburg,* App. Cas. 417, 4 B. W. C. C. 311, said: "We have to decide each case on the facts. Argument by analogy is valueless. I am getting afraid to say anything more by way of judgment than that the appeal should be allowed or dismissed, because what one says in one case is used as an argument why one should decide a particular way in another case." However, certain general rules will aid in the determination of the question.

In the case of *Wiggins* v. *Industrial Acc. Board,* 54 Mont. 335, Ann. Cas. 1918E, 1164, L. R. A. 1918F, 932, 170 Pac. 9, this court laid down a general rule as to what accidents come within the provisions of the Act, as follows: "Without attempting to formulate a rule which will include every injury within the meaning of this phrase, it is sufficient for the purposes of this appeal to say that if, by reason of the nature of the employment itself or the particular conditions under which the employment is pursued, the workman is exposed to a hazard peculiar to the employment under the circumstances, and injury results by reason of such exposure, then it may be said fairly that the injury arises out of the employment, or, stated in different terms, the workman must have been exposed by his employment to more than the normal risk to which the people of the community generally are subject, in order that his injury can be said to arise out of his employment," "without reference to * * * fault and altogether irrespective of whether, under existing laws, actions for damages would lie." (*Lewis*

*and Clark County* v. *Industrial Acc. Board,* 52 Mont. 6, L. R. A. 1916D, 628, 155 Pac. 268.)

In the case of *State ex rel. School District* v. *District Court,* 140 Minn. 470, 168 N. W. 555, the supreme court of Minnesota said: "That under some circumstances an injury from an assault is one caused by accident arising out of the employment is without question; and it is as much without question that under other circumstances it is not. When the nature of the employment is such as naturally to invite assault, or when the employee is exposed to an assault by the character of his work, as when he is protecting or in charge of his employer's property, and the assault naturally results because of the employment and not because of something unconnected with it, so that it is a hazard or special risk of the work, the cases say that it arises out of the employment." (The court then summarizes the cases so holding.) "When the assault is unconnected with the employment, is personal to the assailant and the one assaulted, is not because the relation of employer and employee exists, and the employment is not the cause, though it may be the occasion, of the wrongful act, and may give a convenient opportunity for its execution, the cases say that the intentional injury does not arise out of the employment [giving illustrative cases]."

Bradbury, in his work on Workmen's Compensation (Chap. 8, Art. F, "Assaults"), digests many cases of assault, clearly demonstrating that the courts are in practical accord that (1) personal altercations in no way connected with the employee's duties do not give rise to accident arising out of the employment, but that (2) where the employee is performing work he was employed to perform, and is assaulted because of the work, or of some incident in connection with the work, or his manner of doing it, and receives an injury, it is an accident arising out of his employment.

Section 24(a) of our Compensation Act provides: "Whenever this Act or any part or section thereof, is interpreted by a court, it shall be liberally construed by such court." And in the case of *Shea* v. *North-Butte Min. Co.,* 55 Mont. 522, 179

Pac. 499, it is stated that "the theory of such legislation is that loss occasioned by reason of injury to the employee shall not be borne by the employee alone—as it was under the common-law system—but directly by the industry itself and indirectly by the public, just as is the deterioration of the buildings, machinery and other appliances necessary to enable the employer to carry on the particular industry."

Among the illustrative cases cited by Bradbury, at pages 589, 590, we find the following: "A newspaper reporter was directed by his employer to get the first copy of the newspaper off the press to see if the makeup was correct. He was forcibly resisted by the pressman, the reporter repeatedly and properly attempting to do as he was instructed. When about to report the matter to his superior, the reporter was unexpectedly and without other provocation assaulted. It was held that this was an accidental injury arising out of the employment. (*Brown* v. *Berkeley Daily Gazette,* 2 Cal. Ind. Acc. Com. 32, [841].)

"Two workmen had an altercation in which the one who finally committed the assault was the aggressor and the employer observing it, told them they would both be discharged unless they desisted. A little later the workman who had originally been the aggressor approached from behind the other workman and struck him on the head with such force that he afterward died. It was held that the accident arose out of the employment. (*McNiel* v. *Mountain Ice Co.,* 38 N. J. L. 109, 11 N. C. C. A. 238.)

"A driver told a fellow-workman in a stable that he was using too much water on a horse, when the workman intentionally sprinkled some water on the driver, who was the claimant. The claimant a moment later spoke to the fellow-workman, who slapped the claimant on the shoulder, and as the claimant turned around a finger of the fellow-workman struck the claimant in the eye, causing injuries by which he lost the sight of the eye. It was held that there was sufficient evidence to sustain a finding that the injury arose out of the employment. (*Heitz* v. *Ruppert,* 218 N. Y. 148, 112 N. E. 750, [L. R. A.

1917A, 344].)'' Numerous other cases are noted, but we will not cumber this opinion further by their quotation.

In its final order the board says: "It must be remembered that Mr. Brooks was night foreman, having charge of the property and employees of the Pilot Butte mine, at the time of the accident, and that he stands in the position of the employer. What he knew and did was really what the employer knew and did. In support of this view is the case of *Kinsel* v. *North Butte Mining Co.*, 44 Mont. 445, 120 Pac. 797. Part of the opinion in point on this question is as follows: 'The evident purpose was to show that Wells was a vice-principal. He was engaged in performing a primary absolute and unassignable duty of the master. * * * This fact in itself takes him out of the category of fellow-servants and makes him a vice-principal. * * * His negligent act was that of the master itself.' ''

There seems to be some authority for an additional exception to the rule that ordinarily assault cases do not form the basis for an award when there is a difference in rank between the employee assaulted and the assaulting employee. Thus in the case of *Metropolitan Redwood Lumber Co.* v. *Industrial Acc. Commission Board* (Cal. App.), 182 Pac. 315, after stating the general rule, the court continues: "A second exception is also noted in the cases cited which arises * * * where the injured employee was the superior in rank to the one causing his injuries, the assault arising out of an attempted exercise of discipline on the part of the superior, employee." It would seem that, if such a case constitutes an exception to the rule, the converse would also be true, and an exception would exist where, under like conditions, injury resulted to the employee sought to be disciplined.

A case similar to that just noted is *Polar Ice & Fuel Co.* v. *Mulray* (Ind. App.), 119 N. E. 149, where the facts were that Mulray was a bookkeeper charged with the duty of keeping a record of outgoing merchandise and the returns made by the drivers, and collecting for shortage; a driver, being angered

over an attempted collection, caused trouble in the office, when Mulray drove him off with a revolver, shooting several times over his head; the driver returned armed and killed Mulray. The court in closing its opinion said: "While it may be said that the inference that the unfortunate accident in the case was the result of a risk reasonably incident to Mulray's employment, and therefore arose out of his employment, it is not the only inference which might be drawn from the evidence, yet it is a very reasonable one, and since the industrial board has so concluded, we are required to uphold the award."

Here the inference might be drawn that the trouble between [4] Willis and Brooks arose on account of a feeling of enmity between Willis toward Brooks by reason of the discharge of Shannon, or a feeling that Brooks was attempting to seek excuse for his discharge; or it might be inferred, as it was by the board, that Brooks was the aggressor in the affray because of his anger toward Willis for carrying him to the surface when he did not want to go above the 2,400-foot level, and that what took place thereafter was all a part of the same transaction, resulting finally in the death of Willis, as a result of, and arising out of, his employment. Assuming that such were the facts, under the authorities and sound reasoning, his widow should be awarded compensation for herself and child; and the board having so found, which finding was declared by the district court, on review, to be reasonable, we are of the opinion that the judgment of the district court should be affirmed.

*Affirmed.*

ASSOCIATE JUSTICES HOLLOWAY, HURLY and COOPER concur.

MR. CHIEF JUSTICE BRANTLY, being absent, takes no part in the foregoing decision.