## UNITED STATES CASUALTY CO. v. HAMPTON.　(No. 3362.)

Court of Civil Appeals of Texas. Texarkana.
March 23, 1927.

Rehearing Denied March 31, 1927.

1. Master and servant ⟷375(1)—Injury received in attempting to stop fight by fellow employees held compensable as arising "out of" and "in course of" employment (Workmen's Compensation Act).

Loss by sack-sewer of use of portion of finger resulting from cut received in attempting to separate two employees, one of whom, a subforeman, had attacked the other, a cakeknocker, while he was engaged at work within regular working hours, in the engine room, where all of the employees were then engaged, held an "accident" arising "out of" and "in course of" his employment within the Workmen's Compensation Act (Rev. St. 1925, arts. 8306–8309); the words "out of" pointing to the origin and cause of the accident or injury, and requiring that it result from a risk reasonably incident to the employment, the words "in course of" pointing to the time, place, and circumstances under which the accident or injury occurs, the test under the act being whether the injury had to do with and originated in the business of the employer.

[Ed. Note.—For other definitions, see Words and Phrases, First Series, Out of; First and Second Series, Course.]

2. Master and servant ⟷375(1)—Master may, by reasonable means, protect servant assaulted by fellow servant while at work.

Where servant was assaulted by fellow servant with a knife while engaged at work in engine room during regular working hours, mas-

ter had the right to protect the assaulted servant by reasonable means under his implied obligation to afford him protection.

**3. Costs ⬾3—Awarding costs as of course is statutory.**

Award of costs as of course is purely statutory, existing only by virtue of statute.

**4. Master and servant ⬾403—Injured employee had burden of establishing right to compensation (Rev. St. 1925, art. 8307, subd. 5).**

Under the terms of Rev. St. 1925, art. 8307, subd. 5, where insurance carrier sued to set aside the award and decision of the Industrial Accident Board and disputed not only the amount of compensation, but any liability at all, employee had the burden of establishing his right to any compensaton.

**5. Master and servant ⬾420—Employee obtaining judgment for compensation held entitled to costs, though judgment was less than award; "court" (Rev. St. 1925, arts. 2056, 2065, 2066).**

Where insurance carrier sued to set aside the award and decision of the Industrial Accident Board, and disputed not only the amount of compensation, but any liability at all, and the employee had judgment for compensation employee was entitled to costs as of course, though he received judgment for smaller sum than the original award; Rev. St. 1925, art. 2056, taxing costs against the losing party, being the statute applicable, and not articles 2065, 2066, the Industrial Accident Board being an administrative agency or board and not a "court."

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Court (Of Justice).]

Appeal from Hunt County Court; N. E. Peak, Judge.

Suit to set aside award and decision of the Industrial Accident Board, brought by the United States Casualty Company against Hence Hampton. From a judgment in favor of defendant awarding compensation, plaintiff appeals. Affirmed.

The Industrial Accident Board made an award for compensation to appellee on April 7, 1925. Compensation was allowed to him for 45 weeks at the rate of $11.27 per week. The appellee lost the use of the index finger of the right hand from the second joint to the end of the finger, under the circumstances herein below stated. The appellant denied liability at all for the injury. The present suit was filed in the county where the injury happened, after timely notice of appellant of its refusal to abide the award of the Industrial Accident Board.

The case was tried before the court without a jury, and judgment was entered in favor of appellee, awarding him compensation in the lump sum of $338.10, together with $11.50 medical and drug bills, and costs of the suit. The facts appear undisputed.

The Texas Refining Corporation was operating a cotton seed oil mill and refining plant at Greenville, Tex., and carried a policy of employers' liability insurance with appellant. Hence Hampton was in the employ of the Texas Refining Corporation, and had been for eight years, as a sack-sewer in the oil mill department. Wesley Brown and Junius Miller were also employees, the former as meal cook and subforeman in the press department, and the latter as a cake-knocker working under Wesley Brown. On the night of November 10, 1924, about 11:30 p. m., Hence Hampton, working on the night shift, received an injury, and upon this injury the suit is predicated.

The following are the agreed circumstances under which the injury happened:

"On the night of November 10, 1924, while carrying on the work in the regular manner, Miller and Brown had some sort of a personal difficulty in the pressroom shortly before 11:30 p. m., and, a short time after the difficulty above mentioned, the foreman, L. M. Blackburn, called all the employees from their respective employments to the engine room to help tighten a rope belt, the main belt that drove all the machinery, which was loose and slipping to such an extent as to interfere with the proper working of the machinery, and which required tightening, and, while the employees were so engaged, the operation of the mill was at a standstill. While the men were engaged in tightening the belt, the subforeman, Wesley Brown, went up to L. M. Blackburn, the foreman, and requested him to give June Miller his time, meaning thereby to discharge him, and stated as his reason for such that 'June fights.' On hearing this statement to Blackburn, Miller straightened up from where he was leaning over pulling on the belt and made some remark to Brown. Brown jumped at Miller and slipped his knife out of his sleeve and cut him in the back, reaching over his shoulder. They then clinched and fell. Blackburn yelled out, 'Stop that and come on here,' addressing his remark to no one in particular. At that time nearly all the men had stopped pulling on the rope, and he made this statement, 'Stop that and come on here,' just at the time, or about the time, Brown and Miller clinched and about right at the beginning of the fight. When the fight started, most of the employees quit pulling on the rope, and Hence Hampton heard Mr. Blackburn's command to the men to 'stop that and come on here.' He understood by that that he meant for the men to proceed with the work in hand, and that he addressed his command to 'stop that' to Brown and Miller. He didn't understand Mr. Blackburn to be directing him to in any way interfere in the fight. The fight was delaying the work, and what he meant at the time was for them to stop fighting and come on and do the work that they had to do in the engine room. Hence Hampton caught Wesley Brown's hand, in which he had the knife and attempted to separate them, and in so doing got cut on his right hand, as hereinafter stated. Hence Hampton and some of the other men were pulling on the belt at the time Wesley

Brown came into the engine room, and the fight delayed and stopped the work in which they were engaged—that is, tightening the belt."

Hence Hampton testified, in full as follows:

"My name is Hence Hampton; I am the defendant in this case; I was cut on the hand while working for the Texas Refining Company, in November of last year. The knife that cut me was in the hands of Wes Brown. He cut me on the back of the hand and over the metacarpal bone of the index finger and from the last joint to the end of the index finger. At the time I received the cut I was in the engine room of the refining company and was attempting to separate Wes Brown and June Miller. My purpose in trying to separate Wes Brown and June Miller was to prevent delay in the work that I had been called there to do. There was about eight or nine of us called into the room to tighten the belt. We were all pressroom employees, but worked in different parts. All of us but Wes were pulling on the rope when June and Wes started this fight. When the fight started, they all quit."

There is no dispute as to amount of compensation awarded by the court.

Burgess, Burgess, Sadler, Chrestman & Brundridge and L. E. Elliott, all of Dallas, for appellant.

Bowman & Bowman, of Greenville, for appellee.

LEVY, J. (after stating the facts as above). [1, 2] The appellant urges that the award is erroneous and without authority of law, for the reason that the evidence failed to show the injury in suit arose out of and in the course of his employment, within the Workmen's Compensation Act (Rev. St. 1925, arts. 8306-8309). It is believed the contention should be overruled. The full fact was shown that the appellee, as employee, received a grievous injury to his finger in suppressing a serious affray between two coemployees over the recommendation for discharge of one of them. The appellee was in nowise a party to the quarrel or the fight, and the injury he received was not inflicted intentionally or "because of reasons personal to him." Sole blame for the injury could not be imputed to the appellee. Death caused by knife wounds might have resulted to one of the combatants. The law has so great a regard for human life that it will not impute blameable fault to an effort to preserve it, unless, in the judgment of prudent persons, the effort be done in rashness. Therefore the injury to appellee could be regarded as an accident. The occurrence was wholly upon the premises of the employer. As appears, it occurred "in the engine room," at a time, within regular working hours, "while the men were engaged in tightening the main belt, which drove all the machinery, and which was loose and slipping to such an extent as to interfere with the proper working of the machinery, and which required tightening." Therefore the act in itself done by appellee, of suppressing an affray between two coemployees on the premises during working hours, must be regarded either (1) as a purely moral act, or (2) as an act that might reasonably be done in the service and business of the employer, within the Workmen's Compensation Act. As observed in Honnold on Workmen's Compensation, §§ 101, 116:

"The words 'out of' point to the origin and cause of the accident or injury; the words 'in course of' to the time, place, and circumstances under which the accident or injury takes place. The character or quality of the accident as conveyed by the words 'out of' involves the idea that the accident is in some sense due to the employment. It must result from a risk reasonably incident to the employment."

The test is, Did the injury "have to do with and originate in the business of the employer"? Cassell v. U. S. Fidelity & Guaranty Co., 115 Tex. 371, 283 S. W. 127, 46 A. L. R. 1137. Pranks of employees, as set out in that case, is illustrative of acts included in the test. The general rule is laid down in the case of Durham v. Brown Bros., 36 Scot. L. R. 190, as quoted in Ass'n Employers' Reciprocal v. State Industrial Commission, 82 Okl. 229, 200 P. 174:

"A servant does not cease to be in the course of his employment merely because he is not actually engaged in doing what is specially prescribed to him, if in the course of his employment an emergency arises, and, without deserting his employment, he does what he thinks necessary for the purpose of advancing the work in which he is engaged in the interest of his employer."

Extinguishing fire, the issue in that case, and similar acts of preservation of property, are not the limit of the rule. As stated in Cooperage Co. v. Industrial Commission, 285 Ill. 31, 120 N. E. 530:

"There must be some causal relation between the employment and the injury. * * * No fixed rule to determine what is a risk of the employment has been established. Where men are working together at the same work disagreements may be expected to arise about the work, the manner of doing it, as to the use of tools, interference with one another, and many other details which may be trifling or important. Infirmity of temper, or worse, may be expected, and occasionally blows and fighting. Where the disagreement arises out of the employer's work in which two men are engaged, and as a result of it one injures the other, it may be inferred that the injury arose out of the employment. * * * The dispute was concerning the employer's work in which the men were both engaged, and there is evidence tending to show that the claimant was not responsible for the assault."

The following cases are illustrative of an injury within the rule (an injury from an assault): McClure v. Georgia Casualty Co. (Tex. Com. App.) 251 S. W. 801; Cooperage Co. v. Industrial Commission, 285 Ill. 31, 120 N. E. 530; In re McNicol, 215 Mass. 497, 102 N. E. 697, L. R. A. 1916A, 306; Weekes v. William Stead, Limited, 6 N. C. C. A. 1010; Willis v. Mining Co., 58 Mont. 26, 190 P. 124. As appears in the present case, a causal relation was established between the injury and the employment, and the appellee did what he might reasonably do under his employment. The disagreement and the affray arose out of the employment; namely, the recommendation of discharge of June Miller. Wesley Brown and June Miller were the two fighters. The agreed facts of origin of the difficulty are:

"While the men were engaged in tightening the belt, the subforeman, Wesley Brown, went up to L. M. Blackburn, the foreman, and requested him to give June 'Miller his time, meaning to discharge him, and stated as his reason for such that 'June fights.' On hearing this statement to Blackburn, Miller straightened up from where he was leaning over pulling on the belt and made some remark to Brown. Brown jumped at Miller, and slipped his knife out, and, reaching over Miller's shoulder, cut him in the back. They then clinched and fell. Hence Hampton caught Wesley Brown's hand in which he held the knife, and attempted to separate them, and in so doing got cut on his right hand."

The affray had an effect on the services due from all the employees. It was proven that "when the fight started most of the employees quit pulling on the rope. * * * The fight was delaying the work." Further, it is a significant fact in the present case that Wesley Brown was a "subforeman" of the employer, attacking his coemployee with a deadly weapon while such coemployee was at work. Verbal provocation did not legally justify such attack, and as well such conduct of the subforeman was in violation of his duties to his employer. The circumstances and the relation of the parties would justify and authorize the employer himself, as an implied obligation to afford protection to the assaulted employee, to intervene and suppress the affray by reasonable means. The right of the master exists to interfere and protect his servant's person and interests. I Blackstone Com. 429, 430; 1 Labatt on Master and Servant, § 239, and notes. A servant may likewise do, in virtue of his employment, in his master's interest. As analogous, injuries received by one employee while trying to rescue from danger another employee of a common employer arose out of his employment. Dragovich v. Iron Co., 269 Ill. 478, 109 N. E. 999; Assur. Corp. v. Evans (Tex. Civ. App.) 201 S. W. 705; Waters v. Taylor, 218 N. Y. 248, 112 N. E. 727, L. R. A. 1917A, 347. The ruling is based on the proposition that it would be the duty of the employer himself to attempt to rescue the injured employee, and therefor the attempt of the employee who came to the latter's rescue was performed in the interest of and for the benefit of his employer. Therefore the appellee, in suppressing the affray, could be regarded as having done an act that he might reasonably do under his employment in the interest of his employer, proximately causing accidental injury to him. It could be legally regarded as more than purely a laudable moral act.

[3-5] Appellant next urges that the judgment is erroneous in taxing the costs of the trial court against it, for the reason that the court awarded appellee compensation for a less amount than was awarded him by the Industrial Accident Board. It is argued that "an appeal from the award of the Industrial Accident Board is analogous to an appeal from justice court to a county court," making applicable articles 2065, 2066, R. S. 1925. It is believed that article 2056 of the statute taxing costs against the losing party is the one that has application to the circumstances of the present case. The Industrial Accident Board is legally classed as "an administrative agency or board," and not a "court." Texas Employers' Ins. Ass'n v. Roach (Tex. Com. App.) 222 S. W. 159. Article 2065 is a special statutory provision, and cannot be extended beyond its terms to include such agency or board. Awarding of costs as of course is purely statutory. 15 C. J. § 3, p. 21. The appellant originated the litigation in the courts by resort thereto, and required the injured party to there prosecute the claim to final judgment for relief. The appellant denied any liability at all. The amount of compensation payable was not the sole disputed question. This placed the burden of proof upon the appellee to establish his right to compensation at all. Article 8307, subd. 5; Gorral v. Hamlyn & Son, 38 R. I. 249, 94 A. 877; Armour & Co. v. Industrial Board, 273 Ill. 590, 113 N. E. 138; In re Savage, 222 Mass. 205, 110 N. E. 283; and other cases. And in such circumstances the costs incurred would follow the judgment in favor of the appellee as of course. If the appellee were entitled to judgment for any amount, he was entitled to costs. There is no equitable ground warranting the taxing of costs otherwise. A different question might arise in case of the tender of true amount allowable, or upon some equitable situation arising.

The judgment is affirmed.