**Billy Wayne MARTIN, Appellant,**

v.

**Vernia Marie MARTIN, Appellee.**

No. 6–90–00013–CV.

Court of Appeals of Texas,
Texarkana.

Sept. 25, 1990.

Raymond D. Anderson, Keeney, Anderson, Miller, James & Tate, Texarkana, for appellant.

Lynn Cooksey, Cooksey & Harrell, Texarkana, for appellee.

Before CORNELIUS, C.J., and BLEIL and GRANT, JJ.

## OPINION

GRANT, Justice.

Billy Wayne Martin appeals from a divorce action brought by Vernia Marie Martin. He complains about the division of the community property, the amount of child support, and the court costs assessed against him.

Billy Martin contends that the trial court abused its discretion in failing to make a substantially equal division of the community property and that the trial court erred in establishing the child support at $300 per month after the master in chancery had recommended $250 per month and in assessing $1250 court costs against him.

Billy Martin and Vernia Martin were married on November 20, 1976. On September 16, 1988, Vernia filed a petition for divorce against Billy, and on September 21, 1988, Billy cross-filed for a divorce. The Martins are parents of three minor children. On July 20, 1989, the court appointed Cary Rochelle as master in chancery for the Martin case. After the hearing before the master, the master prepared and filed with the court his report dated October 31, 1989.

Billy filed objections to the report of the master, contending that the findings of fact made by the master were erroneous as to the value placed on numerous specified assets involved in the division of property, in its omission of the lien indebtedness upon various community properties, in its recommended division of the community properties, and in its recommended amount of child support.

On December 11, 1989, a hearing was held before the court on the objections to the master's report. The judge refused to hear new evidence, stating that the purpose of the hearing was "to hear objections to the court's master; ... not to take new evidence." The court went on to say that it was not going to allow testimony because "the reason why the court appoints the master to start with is so that this court does not have to sit back and divide these pots and pans."

At the conclusion of the hearing, the court stated that it was overruling the objections and adopting the master's report which was on file with the court. After adopting the report, the court granted the divorce, but set the child support at $300 per month instead of the $250 per month amount set by the master. The court announced that it was assessing the cost of the master at $500 to be paid by both parties for the master's time in conducting the hearings and preparing the report and the amended report. The court went on to state that it was assessing the court cost of $200 against Billy Martin for filing objections to the master's report and thus creating the need for the master to respond, and the court assessed another $750 against Billy Martin for the hearing being conducted on the objections to the master's report. In the decree, Vernia Martin is ordered to pay the master in chancery a fee of $500 and Billy Martin to pay the master in chancery a fee of $1,250 as court costs.

■ The appointment of a master in chancery in a divorce case is generally not done unless the case is exceptional and good cause exists. *Bell v. Bell*, 540 S.W.2d

432 (Tex.Civ.App.–Houston [1st Dist.] 1976, no writ); *Creglar v. Hyde,* 280 S.W.2d 783 (Tex.Civ.App.–Waco 1955, writ ref'd n.r.e.). There was no objection in the trial court or on appeal to the appointment of a master. A master may be appointed pursuant to Rule 171 of the Texas Rules of Civil Procedure (Masters in Chancery) and also pursuant to subchapter 54 of the Texas Government Code (Family Law Masters). Because the order in the case specifies the appointment of a master in chancery and because the empowering language of that order tracks the language of Rule 171, we assume that this appointment was made pursuant to Rule 171. However, even if the appointment had been made pursuant to the Government Code, we do not find any differences between the applicable law that would have altered the outcome of this case.

Rule 171 provides that "the court may confirm, modify, correct, reject, reverse or recommit the report, after it is filed, as the court may deem proper and necessary in the particular circumstances of the case." This provision does not authorize the court to make modifications or corrections without having some basis in evidence upon which to make these modifications and corrections. When issues are referred to and heard by a master, the master's report is conclusive on the issues considered by the master in the absence of a proper objection. *Cameron v. Cameron,* 601 S.W.2d 814 (Tex.Civ.App.–Dallas 1980, no writ). When excepted to, the master's report is without force. 3 R. McDonald, TEXAS CIVIL PRACTICE IN DISTRICT AND COUNTY COURTS § 10.17.3 (rev.1983). The issues of fact that are raised by the objections are tried *de novo* before the court if no jury has been requested.[1] *San Jacinto Oil Co. v. Culberson,* 100 Tex. 462, 101 S.W. 197 (1907). This means that evidence must be heard anew on issues to which there are objections.

A party dissatisfied with the master's report has the burden to make specific objections before the report is adopted by the court. *McCrory & Co. v. Avery Mays Construction Co.,* 690 S.W.2d 333 (Tex. App.–Dallas 1985, writ ref'd n.r.e.); *Novotny v. Novotny,* 665 S.W.2d 171 (Tex.App.–Houston [1st Dist.] 1983, writ dism'd). Billy Martin made written objections to the master's report as required by the court's order in appointing the master. When objections are made to the master's report, each party has the right to present evidence on the issues specified in the objections and have the court or jury decide those issues on the basis of the evidence presented in court. As previously noted, the evidence must be heard anew on issues concerning objections to the master's finding. *Cameron v. Cameron,* 601 S.W.2d 814.

Billy Martin made no objections to the court's refusal to hear evidence *de novo* nor did he seek to make a bill of exceptions to show what evidence he would have offered had he been allowed to present evidence.

In spite of the court's ruling that there would be no evidence presented, the master and Vernia Martin testified and one income tax return was admitted into evidence. Because there was no objection to the refusal of the trial court to admit other evidence and because that procedure is not challenged on appeal, we must determine the other points of error based upon the evidence that was presented to the court. The master's report was not offered into evidence, and it would not have been admissible into evidence if it had been introduced. *San Jacinto Oil Co. v. Culberson,* 101 S.W. 197. Billy Martin devotes most of his brief to challenging the master's report; however, this Court is not reviewing the master's findings to determine if they are supported by evidence. We are reviewing the trial court's findings.

---

1. This procedure is established not only by case law in Texas but also by statutes authorizing masters. For example, Section 54.011 of the Texas Government Code provides that the court may adopt, approve, or reject the master's report or hear further evidence or recommit the matter to the master. Section 54.012(e) of the Government Code provides that a hearing before the court will be *de novo* on the issues raised.

The record shows that the judge based his decision in dividing the property on the report of the master even though the report was not in evidence.[2] The master testified to the values and debts concerning some of the property belonging to the estate, and even though this testimony was hearsay, pursuant to Tex.R.Civ.Evid. 802, unobjected to hearsay has probative value. However, only a portion of the figures in the master's report were referred to in evidence. A division of property based on values that were not in evidence is an abuse of discretion. *Mata v. Mata,* 710 S.W.2d 756 (Tex.App.–Corpus Christi 1986, no writ). However, Billy Martin has not challenged the court's reliance upon matters not in evidence, but rather has submitted various figures from the master's report to show that there was an unequal division of the properties.

The trial court's division of the property should be corrected on appeal only when the trial court clearly abused its discretion by a division that is manifestly unjust and unfair. *McKnight v. McKnight,* 543 S.W.2d 863 (Tex.1976); *Cockerham v. Cockerham,* 527 S.W.2d 162 (Tex.1975); *Law v. Law,* 517 S.W.2d 379 (Tex.Civ.App.–Austin 1974, writ dism'd). A presumption arises on appeal that the trial court correctly exercised its discretion in dividing property in a divorce proceeding, and the burden rests on the appellant to show from the record that the division was so disproportionate as to be manifestly unfair. *Law v. Law,* 517 S.W.2d 379.

In his brief, Billy Martin attempts to show that the property division was inequitable by comparing the net values of the personal property awarded to each party, as set forth in the master's report. However, in order to determine if a division is manifestly unjust, the comparison must include all of the property, including the real estate. Furthermore, Billy Martin's calculations include $5,748.81 as a community debt, but the only evidence was the master's testimony that this was Billy Martin's separate debt for medical bills and other expenses for his children of a previous marriage. After removing this figure from the net assets received by the spouses and including the liens that Billy Martin contends exist on the real property, the figures from the master's report indicate that he is receiving forty-six percent of the community assets and Vernia Martin is receiving fifty-four percent. The trial judge had no record from which to determine the correctness of the master's report, and we have no record on appeal from which we can determine the correctness of the evaluations. Billy Martin has not fulfilled his burden of showing from the record that the division was so disproportionate as to be manifestly unfair.

Next, Billy Martin contends that the trial court erred in setting the child support payment at $300 per month because the master in chancery had recommended $250 per month.[3] Billy correctly contends that no written objection had been filed by Vernia to the master's report. The order appointing the master in chancery required that either party desiring to object to the master's report must file a written objection within ten days after the filing of the master's report. Even though Vernia had not filed an objection, the trial court allowed her to make an oral objection through her counsel during the hearing. We do not reach the question of whether the trial judge could modify the written order and allow the late exception because Billy Martin had also objected to the amount of child support. His objection brought this matter back to the trial court *de novo,* and the trial court could modify

---

2. The trial court stated
   I have it [the master's report] in my hand. The Court Reporter will note that the Court holds in its hand right now the Report of the Master and the Amended Report, and that is the only Report received by this Court and is the only one the Court will look at, because it is the official Report of the Master, and I will accept no document by anyone that attempts to alter or amend that, other than an amended Report officially done by the Master, himself.

3. The master, in his response to Billy Martin's objections, stated that he had set the amount at $250 because he understood that the parties had agreed upon that amount.

the amount after hearing the evidence.[4] The only documentary evidence offered was Billy Martin's income tax return for 1988 showing an adjusted gross income of $6,311 for that year.[5] The master testified that Billy Martin had net disposable income of $1,000 per month. Based upon the master's testimony, the $300 per month child support for three children falls within the child support guidelines set by the Texas Supreme Court.[6] This point of error is overruled.

Next, Billy Martin contends that the trial court erred in assessing him court costs of $200 for the response by the master to the objections of the appellant and by assessing him with $750 as court costs for the hearing on objections to the master's report.

The right to costs is based entirely on statutes or procedural rules. *United States Casualty Co. v. Hampton*, 293 S.W. 260 (Tex.Civ.App.–Texarkana 1927, no writ). Rule 171 of the Texas Rules of Civil Procedure provides that "the court shall award reasonable compensation to such master to be taxed as costs of suit." The awarding or refusing of the master's fee is within the sound discretion of the trial court and is not reviewable absent an abuse of discretion clearly apparent from the record. *Roberson v. Roberson*, 420 S.W.2d 495 (Tex.Civ.App.–Houston [14th Dist.] 1967, writ ref'd n.r.e.).

The initial pronouncement of the court indicated that Billy Martin was to pay $200 because he had filed objections to the master's report and thus created the need for the master to respond and another $750 for the hearing being conducted on the objections to the master's report. There is no authorization in the law for the master to take an adversary position at the trial before the court, and any response to the objections to his report should have been made by the opposing party. Therefore, the time spent by the master in making his written response is not chargeable to Billy Martin's court costs because he was outside of the role of a master in chancery. Furthermore, the master was not an appropriate witness at the proceeding. The trial court is not concerned with what evidence was presented to the master but is to hear the contested matter anew. However, inasmuch as Billy Martin was the party calling the master to the stand, he cannot complain about paying for the time involved in that hearing. However, such court costs cannot be used punitively, and $750 for the time it took for the master to testify is excessive.[7] The $750 cost is reduced to $350. It does not appear that the $200 for the master's filing of objections was contained in the final decree, so no action is required concerning that amount. Thus, Billy Martin's court costs are reduced to a total of $850 for the cost of the master.

The judgment of the trial court is affirmed with the modification that court costs are reduced to $850 to be taxed against Billy Martin for the master.

---

4. The trial court ruled that Billy Martin had waived some of his exceptions because he did not "urge them before the court." The only requirement to preserve objections is to file those objections with the court. At that point the matter will proceed trial *de novo.*

5. The ruling admitting the income tax return into evidence was inconsistent with the trial court's prior ruling that it would not accept any new evidence.

6. Tex.Fam.Code Ann. § 14.055(b) (Vernon Supp.1990) provides that the court should presumptively set child support for an obligor with three children at thirty percent of his monthly net resources.

7. The master's entire testimony is contained in approximately fourteen pages of the statement of facts.