

**NUMBER 13-08-310-CV**

**COURT OF APPEALS**

**THIRTEENTH DISTRICT OF TEXAS**

**CORPUS CHRISTI - EDINBURG**

---

**KHALEDA P. BHATTI,** <span style="float:right">**Appellant,**</span>

**v.**

**MUHAMMAD I. BHATTI,** <span style="float:right">**Appellee.**</span>

---

**On appeal from the 93rd District Court
of Hidalgo County, Texas.**

---

**MEMORANDUM OPINION**

**Before Justices Rodriguez, Garza, and Vela
Memorandum Opinion by Justice Vela**

Appellant, Khaleda P. Bhatti ("Khaleda"), appeals a trial court judgment granting a divorce from appellee, Muhammad Bhatti ("Muhammed"). By one issue, Khaleda complains that the trial court erred in entering judgment based upon the findings of an appointed master because the master did not afford her an opportunity to be heard at a

meaningful time and in a meaningful manner, thereby violating her right to due process of law.  We affirm.

## I. BACKGROUND

Muhammed filed an original petition for divorce on May 16, 2006, stating discord or conflict of personalities as grounds for the divorce.  Khaleda countersued on June 8, 2006.  The parties' two children were both under the age of eighteen at the time of the divorce.

Before granting the divorce, the trial court held a number of contested hearings.  The first, on December 13, 2006, concerned modification of temporary orders for visitation during the Christmas holidays.  At that hearing, Muhammed complained that he had never been able to have possession of the children on his scheduled weekends.  Ultimately, the parties agreed to alter the Christmas visitation.

On May 22, 2007, the trial court held a final hearing on the divorce.  At that hearing, the attorneys announced that the parties had come to a resolution.  They agreed that the home and furnishings would be awarded to Khaleda as her separate property.  She was also to receive her retirement account and some cash.  Muhammed would receive his retirement account.  The couple agreed that the children's education accounts would be held in the children's names.  Each party was awarded an automobile.  The parties also agreed on the matter of child support.

The primary controversy at the final hearing involved possession and access to the children.  The oldest, sixteen years old at the time, was a student at the University of Texas. The younger child was fourteen years old.  Muhammed sought standard visitation, but agreed to give his older son seven days notice because of the child's educational concerns.  Later, however, Muhammed reneged somewhat, stating that he could not

always give the seven-day notice because his employer sometimes sent him to Austin on short notice. Presumably, he wanted to visit his son while in Austin. Khaleda told the court that Muhammed had brought the police to the house twice because the children did not want to go with him. The older son testified that he feared his father because of "many past incidents." The trial court stated at the end of the hearing that it was going to order joint managing conservatorship of the children and ordered the parties to prepare a decree that reflected the agreements.

In June 2007, Khaleda filed a motion to set aside the earlier agreement. At a July 3, 2007, hearing on her motion, Khaleda testified that she had taken $30,000 out of the parties' checking account to pay for their oldest son's education. According to Khaleda, Muhammed had taken $35,000 of their savings and, later, an additional $50,000 before the oldest child started college. He admitted that he had taken $17,500 and sent it to family members in Pakistan. At the hearing, Khaleda testified that she believed Muhammed made additional misrepresentations with respect to the money. Both children stated that they wanted visitation to be on their terms. At the end of the hearing, the court stated that the standard visitation order would be in effect. The trial court also advised the parties that it might appoint a special master.

At some point, the trial court appointed David Calvillo to be the special master. No written order appears in the record showing when the appointment occurred. No objections were made, however, with respect to the appointment. Both parties submitted to the court statements of how they believed the assets should be divided, attaching supporting proof. On November 23, 2007, the master made his recommendations to the trial court, which, in most respects, mirrored the parties' earlier agreement. Khaleda objected to the

3

recommendations, stating that the master had exceeded the authority given him by the trial court by making recommendations regarding custody and visitation. She also urged that the master failed to examine evidence concerning the concealment of cash by Muhammed as well as a complaint that the special master did not conduct any evidentiary hearings. Muhammed responded, arguing that the trial court had, indeed, given the special master authority to decide all disputes. Muhammed claimed that before initiating his report, the special master met with counsel for both parties to discuss their respective claims and both parties submitted documents for his review.

On January 16, 2008, the trial court held a hearing on the objections to the master's report. At that hearing, the trial court heard argument, but no evidence was offered by either party. With regard to the visitation issue, Khaleda's counsel stated: "And we'll go with what the Court says, but we just wanted to bring light to the Court about the different omissions here in this report." At the hearing, the trial court indicated that it would review what the master had done. At no time, did the court refuse to review additional evidence. The trial court overruled Khaleda's objections to the report on February 6, 2008, and signed the final decree of divorce on February 14, 2008.

The trial court, thereafter, heard Khaleda's motion for new trial. At the hearing, the trial court explained to her that the master had not decided the visitation issue; rather, the trial court had. No evidence was offered at this hearing. At the end of the hearing, the trial court denied Khaleda's motion for new trial. This appeal ensued.

## II. APPLICABLE LAW AND STANDARD OF REVIEW

The trial court appointed a master in this case. Because the record does not state the authority for the appointment of the master, we will assume that the appointment was

4

made pursuant to rule 171 of the Texas Rules of Civil Procedure, which provides, in part:

> The court may, in exceptional cases, for good cause appoint a master in chancery, who shall be a citizen of this State, and not an attorney for either party to the action, nor related to either party, who shall perform all of the duties required of him by the court, and shall be under orders of the court, and have such power as the master of chancery has in a court of equity.
>
> . . . .
>
> He may require the production before him of evidence upon all matters embraced in the reference, including the production of books, papers, vouchers, documents and other writings applicable thereto. He may rule upon the admissibility of evidence, unless otherwise directed by the order of reference and has the authority to put witnesses on oath, and may, himself, examine them, and may call the parties to the action and examine them upon oath. When a party so requests, the master shall make a record of the evidence offered and excluded in the same manner as provided for a court sitting in the trial of a case.
>
> . . . .
>
> The court may confirm, modify, correct, reject, reverse or recommit the report, after it is filed, as the court may deem proper and necessary in the particular circumstances of the case. The court shall award reasonable compensation to such master to be taxed as costs of suit.

TEX. R. CIV. P. 171.

The appointment of a master in chancery is done in exceptional circumstances when there is good cause. *Bell v. Bell*, 540 S.W.2d 432, 438 (Tex. Civ. App.–Houston [1st Dist.] 1976, no writ). No objection was made in this case to the appointment of the master. Case law construing the rule provides that the filing of special exceptions to the master's report allows the objecting party to obtain a trial de novo. *Young v. Young*, 854 S.W.2d 698, 701 (Tex. App.–Dallas 1993, writ denied). When objections are made to the master's report, each party has the right to present evidence on the issues specified in the objections and have the court decide these issues. *Id*. In our review, we review the trial court's judgment,

5

not the master's findings. *See Martin v. Martin*, 797 S.W.2d 347, 350 (Tex. App.–Texarkana 1990, no writ). A trial court's division of property in a divorce case should be corrected only when the trial court abuses its discretion by a division that is manifestly unjust and unfair. *McKnight v. McKnight*, 543 S.W.2d 863, 868 (Tex. 1976).

### III. ANALYSIS

Here, Khaleda properly objected to the master's findings. After the trial court rendered judgment, Khaleda also timely filed a motion for new trial. We have reviewed the record and can find no specific request prior to the judgment being entered for the trial court to conduct a trial de novo. Rather, Khaleda's complaint is that the master did not conduct hearings or provide her due process at that stage of the proceeding. Regardless, no one attempted to introduce additional evidence. On the record before us, we cannot conclude–one way or the other–whether the master heard evidence, whether Khaleda asked him to hear evidence or, whether he refused to hear evidence that she attempted or requested to present.[1] The record only reflects that both parties presented documents to the master for his review. This Court has no way of knowing if these documents were evidentiary in nature. Based on the record before us, we cannot conclude that there was error in the master's report.

Prior to appointing the master, the trial court heard evidence with regard to possession of the children and the agreed distribution of property. The court stated on the record that it was he, not the master, who had made the decision with respect to custody

---

[1]Counsel for Khaleda stated that during the hearing on her objections the master had not conducted hearings with regard to Muhammed's alleged misrepresentation of the value of assets, but nothing appears of record showing that any hearing had either been requested or denied. There was a discussion on the record that the master had met with the attorneys and had asked them for documentation with regard to their individual positions.

6

and possession issues. The court also stated at the hearing on Khaleda's objections to the master's report that the court owed the Bhattis the opportunity to "hear [their] arguments and then review it again with that background still fresh in [his] mind." Neither party actually asked for a de novo hearing or trial before the trial court entered its judgment. The trial court indicated that it would independently review the information that had been presented to the master. While it was clear that the trial court thought that the master had done a good job, there is nothing in the record to suggest that Khaleda was denied the right to present evidence to the trial court or that she was denied due process at any stage of the proceedings.

Moreover, the court's property disposition was basically in accord with the parties' earlier agreement. The trial court heard testimony and argument at an earlier hearing and was aware that Khaleda believed that Muhammed had secreted some assets to Pakistan as early as 1996 and had misrepresented the value of his retirement account by $20,000. Again, this Court has no way of knowing exactly what either the master or the trial court reviewed.

We recognize the case law is clear that one is entitled to a de novo hearing on the master's recommendation if there are proper objections to the master's report. *See Young*, 854 S.W.2d at 171. However, the record does not reflect that a trial de novo was ever specifically requested or refused before the court reviewed the master's report and entered judgment. We also are unable to determine what, exactly, the trial court reviewed in response to Khaleda's objections. It appears that the trial court, in fact, reassessed what the master had done independently and determined that the master's determination was proper. Having determined that the record before us does not show that error, if any, has

7

been preserved, we cannot conclude the trial court abused its discretion.  Tᴇx. R. Aᴘᴘ. P. 33.1.  We overrule Khaleda's issue.

## IV. Cᴏɴᴄʟᴜsɪᴏɴ

The judgment of the trial court is affirmed.


ROSE VELA
Justice


Memorandum Opinion delivered and
filed this 20th day of August, 2009.