NO. 07-09-00146-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL A

JANUARY 4, 2011

---

IN THE MATTER OF THE MARRIAGE OF LEANNE
FARRELL COLLIER AND ROBERT GREG COLLIER AND
IN THE INTEREST OF R.C.C., A CHILD

---

FROM THE 99TH DISTRICT COURT OF LUBBOCK COUNTY;

NO. 2007-539,120; HONORABLE BLAIR CHERRY, JUDGE

---

Before CAMPBELL and HANCOCK and PIRTLE, JJ.

**OPINION**

Appellant, Robert Greg Collier, appeals a final decree of divorce that dissolved the marriage between himself and appellee, Leanne Farrell Collier; named Leanne sole managing conservator of their son, Robert Colt Collier; set Greg's child support obligation; and divided the community estate. Greg presents ten issues by his appeal. We will reverse and remand.

<u>Background</u>[1]

Greg and Leanne met online in early 2005. Leanne lived in New York, while Greg lived in Lubbock. Leanne visited Greg a few times in Lubbock before Greg asked Leanne to marry him. Leanne accepted, moved to Lubbock, and they got married in October 2005. On March 6, 2007, Leanne gave birth to their son, Colt.

The couple had a fairly tumultuous relationship prior to the birth of Colt, but disagreements regarding child rearing greatly exacerbated the problems in the relationship. Within eight weeks of the birth of Colt, the couple separated. On the day after Leanne left Greg, she filed for divorce. Soon thereafter, Greg filed his counterpetition for divorce.

Following trial on April 23 and 24 of 2008, the trial court orally granted the divorce, found Greg at fault for the breakup of the marriage, made a finding of family violence, appointed Leanne sole managing conservator of Colt, appointed Greg possessory conservator of Colt, and ordered that Greg's visitation with Colt was to be "solely at the discretion" of Leanne. The trial court also made certain broad findings regarding the division of the community, but asked the parties to submit additional briefing regarding the appropriate division of the community estate. The trial court signed its final decree of divorce on February 5, 2009.

Greg timely requested findings of fact and conclusions of law, and separately requested specific findings relating to the child support and possession orders. When

---

[1] Due to the nature of the issues presented, the facts will be addressed more thoroughly in the analysis of the issues presented below.

the trial court did not issue findings and conclusions when they were due, Greg filed notices of past-due findings and conclusions relating to each of his requests. The trial court issued findings of fact and conclusions of law on April 2, 2009. Greg then requested additional findings of fact and conclusions of law, which included, *inter alia*, a second request for statutorily required findings on child support and possession. The trial court entered additional findings of fact and conclusions of law on April 23, 2009. Greg timely filed notice of appeal.

By ten issues, Greg appeals. Greg's first four issues challenge the trial court's determinations regarding custody of Colt. Greg's fifth issue challenges the trial court's child support order on the basis that the trial court did not enter statutorily mandated findings even after the same were properly requested. By his sixth issue and the sole issue presented in his supplemental brief, Greg challenges the trial court's division of the community estate. By his seventh issue, Greg challenges the trial court's award of $100,000 in reimbursement to Leanne for contributions made by her and the community in benefit of Greg's separate property. By his eighth issue, Greg contends that the trial court improperly imposed discovery sanctions against him without notice and hearing. Finally, by his ninth issue, Greg contends that the trial court erred in denying his motion for new trial.

Custody Issues

By his first four issues, Greg challenges the trial court's determinations regarding custody of Colt. Specifically, Greg challenges the trial court's appointment of Leanne as sole managing conservator of Colt, possession order that limits Greg's access to Colt to

the discretion of Leanne, and refusal to afford Greg certain parental rights that are statutorily afforded to possessory conservators. Because of these rulings, Greg contends that the trial court impermissibly infringed on Greg's constitutional rights as a parent.

The best interest of a minor child shall always be the primary consideration of the court in determining the issues of conservatorship, and possession of and access to the child. TEX. FAM. CODE ANN. § 153.002 (West 2008);[2] see Gillespie v. Gillespie, 644 S.W.2d 449, 451 (Tex. 1982). In determining what is in the best interest of a minor child, the trial court is given wide latitude. Id. We review the trial court's judgment regarding issues of conservatorship, possession, and access for an abuse of discretion. See id.; Niskar v. Niskar, 136 S.W.3d 749, 753 (Tex.App.—Dallas 2004, no pet.). The test for abuse of discretion is whether the trial court acted without reference to any guiding rules and principles or, stated another way, whether the trial court's act was arbitrary or unreasonable. Downer v. Aquamarine Operators, Inc., 701 S.W.2d 238, 241-42 (Tex. 1985). There is generally, however, no abuse of discretion when there is some evidence to support the trial court's decision; thus, a trial court abuses its discretion when it could reasonably have reached only one decision and fails to do so. Walker v. Packer, 827 S.W.2d 833, 839-40 (Tex. 1992). Under an abuse of discretion standard, legal and factual sufficiency are not independent grounds for asserting error, but are relevant factors in assessing whether a trial court abused its discretion. Niskar, 136 S.W.3d at 753.

---

[2] Further reference to provisions of the Texas Family Code will be by reference to "section ___" or "§ ___."

a. Sole Managing Conservatorship

By his first issue, Greg contends that the trial court abused its discretion in naming Leanne sole managing conservator of Colt. Greg cites the statutory presumption that appointment of a child's parents as joint managing conservators is in the best interest of the child. See § 153.131(b) (West 2008). Greg then contends that there was no credible evidence or insufficient credible evidence to rebut this statutory presumption. In response, Leanne points to the trial court's finding that Greg has a history and pattern of family violence during the two years preceding the date that the petition for divorce was filed as removing the presumption and authorizing the trial court's appointment of Leanne as sole managing conservator.

It is presumed that the appointment of both parents of a child as joint managing conservators is in the best interest of the child. Id. However, this presumption is overcome if credible evidence is presented that one parent has committed a history or pattern of child neglect, or physical or sexual abuse against the other parent or the child. § 153.004(b) (West 2008). It is for the trial court to determine whether such credible evidence was presented. Coleman v. Coleman, 109 S.W.3d 108, 111 (Tex.App.—Austin 2003, no pet.). When the parties testify to different versions of the same encounter, the trial court is the sole judge of the weight and credibility of the evidence. Id. This is so because the trial court is in a better position than an appellate court to determine what is in the best interest of the children because the trial court observed the parties and witnesses, noted their demeanor, and had the opportunity to evaluate their claims. Stucki v. Stucki, 222 S.W.3d 116, 124 (Tex.App.--Tyler 2006, no

5

pet.) (citing Martinez v. Molinar, 953 S.W.2d 399, 403 (Tex.App.--El Paso 1997, no writ)).

Greg contends that the trial court's finding that Greg had a history or pattern of family violence is not supported by credible evidence because all of the evidence of the incidents upon which the finding is based was derived solely from Leanne's testimony and was not corroborated by any other source. The incidents upon which the trial court's finding is based include Greg tackling and restraining Leanne while she was pregnant, shoving Leanne into a bathroom and barricading her inside, ripping Colt away from Leanne's breast while he was feeding, threatening to kill Leanne if she returned to the family home, verbally abusing Leanne on multiple occasions, and forcing Leanne to sit idly by while her son cried due to hunger.[3] While we acknowledge that the majority of these incidents are evidenced by nothing more than Leanne's testimony and that Greg refuted that these events occurred, the trial court was able to observe the demeanor of the parties and to assess the credibility of their testimony. The trial court did not abuse its discretion by believing the testimony of Leanne and disbelieving the contrary testimony of Greg. See id. Further, the trial court did not abuse its discretion by believing Leanne's testimony, even though testimony was offered that Leanne has a tendency to exaggerate.

Looking to the totality of the evidence presented regarding whether Greg had a history or pattern of family violence, we cannot conclude that the trial court's finding was

---

[3] The focus of this analysis is on Greg's actions toward Leanne. The evidence that Greg had a history or pattern of family violence directed to Leanne is significantly greater than the evidence that Greg was violent toward Colt.

6

unsupported by credible evidence, or that its determination of the credibility of the witnesses constituted an abuse of discretion. Consequently, the trial court's finding of a history or pattern of family violence precluded it from appointing the parties joint managing conservators of Colt. See § 153.004(b). As such, we conclude that the trial court did not abuse its discretion in appointing Leanne sole managing conservator of Colt. We overrule Greg's first issue.

b. Possession Order

By his second issue, Greg contends that the trial court abused its discretion by entering a possession order that effectively denies Greg access to Colt. This issue challenges the trial court's order that Greg's visitation with Colt will be at the sole discretion of Leanne. Specifically, Greg argues that the possession order effectively terminates Greg's parental rights without the safeguards required in a termination proceeding, and that the possession order is unenforceable by contempt. Leanne responds contending that the trial court based its possession order on Greg's history or pattern of family violence as well as its finding that Greg's untreated problems with impulsiveness and explosiveness pose a danger to Colt. Leanne contends that the trial court's possession order was not an abuse of discretion and that, if Greg chooses to pursue the psychological evaluation and treatment recommended by Dr. Wall, Greg could file a motion to modify seeking additional access to Colt.

The Texas Family Code provides that there is a rebuttable presumption that the standard possession order: (1) provides reasonable minimum possession of a child for a parent named as a possessory conservator or joint managing conservator; and (2) is

7

in the best interest of the child. § 153.252 (West 2008). However, a trial court may deviate from the standard possession order depending on factors such as the age, developmental status, circumstances, needs, and best interest of the child; and the circumstances of the managing conservator and of the parent named possessory conservator. See § 153.256 (West 2008).

When a trial court appoints a parent possessory conservator, it can conclude that unrestricted possession would endanger the physical or emotional welfare of the child, while restricted possession or access would not. See In re Walters, 39 S.W.3d 280, 286 (Tex.App.—Texarkana 2001, no pet.). The court can also conclude that access would not endanger the physical or emotional welfare of the child, but that access is not in the best interest of the child. Id. However, the court cannot conclude, that all access, even restricted access, would endanger the physical or emotional welfare of the child, because such a conclusion would prevent the trial court from appointing the parent possessory conservator. Id.

However, even when the trial court is justified in deviating from the standard possession order, the trial court must maintain the power to enforce its judgment. In re J.S.P., 278 S.W.3d 414, 422 (Tex.App.--San Antonio 2008, no pet.). To maintain this power, the order must be sufficiently specific so as to be enforceable by contempt. Id. at 422-23. When the order appoints a parent as possessory conservator, the trial court must specifically state the times and conditions for possession of or access to the child unless a party shows good cause why specific orders would not be in the child's best interest. § 153.006(c) (West 2008). Even when restrictions are in the best interest of

8

the child, it remains the court's responsibility to specifically define those terms in its decree. In re J.S.P., 278 S.W.3d at 423; In re A.P.S., 54 S.W.3d 493, 499 (Tex.App.--Texarkana 2001, no pet.). The judgment must state in clear and unambiguous terms what the parties must do to comply with the possession order in a manner that is specific enough to allow an aggrieved party to obtain enforcement of the judgment by contempt. In re J.S.P., 278 S.W.3d at 423; In re A.P.S., 54 S.W.3d at 499.

In the present case, the trial court's possession order provides that Greg's "visitation with the child shall be at the discretion of LEANNE FARRELL COLLIER." While the trial court clearly expressed its desire that Greg comply with the recommendations of Dr. Wall, no such requirement is specified in the possession order or elsewhere in the divorce decree. The effect of the trial court's possession order is that Leanne is afforded complete discretion over Greg's possession of Colt and, as such, is unenforceable by contempt. Consequently, the possession order could effectively deny Greg any access to Colt while also denying Greg the remedy of contempt against Leanne.

Because the order could deny Greg access to Colt, we must determine whether the trial court concluded that a complete denial of access is in the child's best interest. While the trial court found that Greg had a history or pattern of family violence and that his untreated problems with impulsiveness and explosiveness pose a danger to Colt, the trial court's appointment of Greg as possessory conservator implies that any threat he poses to Colt can be remedied by restricted access to or possession of Colt. Based on the evidence discussed in the preceding issue, the trial court had sufficient evidence

9

to conclude that Greg would pose some danger to Colt if he were given unrestricted possession; however, a complete denial of access was not warranted, and is inconsistent with the trial court's naming of Greg as possessory conservator.

In a factually similar situation, the San Antonio court concluded that a possession order that denied a possessory conservator any access to his child until a therapist recommended otherwise was unenforceable by contempt and, therefore, was an abuse of discretion. See Hale v. Hale, No. 04-05-00314-CV, 2006 Tex.App. LEXIS 747, at *9-*10 (Tex.App.—San Antonio Jan. 25, 2006, pet. denied) (mem. op). In Hale, the trial court heard evidence that the possessory conservator may have sexually abused his daughter or that he was "grooming" her to be sexually abused. Id. at *6. On this basis, the trial court denied the possessory conservator access, but specified that the possessory conservator could obtain visitation with his daughter upon the recommendation of a therapist. Id. at *8-*9. However, because the possession order did not name a therapist or provide any guidelines to ensure that the best interest of the child was protected, the possession order was reversed as lacking the specificity required to make it enforceable by contempt. Id. at *9-*10.

Here, Greg's problems are not of such a nature that a complete denial of access to Colt can be reasonably found to be in the best interest of Colt. Dr. Wall testified that Greg should have "no visits at all to visits with a professional involved" until he receives further evaluation and treatment. "A parent appointed possessory conservator should at least have periodic visiting privileges with their child and should not be denied such, except in extreme circumstances." Id. at *8. Thus, professionally supervised visitation

10

would have afforded Greg some access to Colt, while ensuring that Colt's best interest is protected. Further, nothing in the possession order or even elsewhere in the divorce decree identifies what actions Greg would need to undertake to obtain the right to possession of or access to Colt.

Leanne relies on In re R.D.Y., 51 S.W.3d 314 (Tex.App.--Houston [1st Dist.] 2001, pet. denied), to establish that the trial court's order was sufficient. In In re R.D.Y., the trial court named a father, mother, and grandmother joint managing conservators of the child. Id. at 317. The grandmother was given the right to determine the residence of the child and was allowed "sole discretion" to determine if the mother was "mentally and physically capable of properly exercising her visitation with the child." Id. The Houston court upheld the trial court's order based on the judge's discretion to place conditions on the mother's visitation when necessary to protect the best interest of the child. See id. at 324. We disagree with the holding of the Houston court in In re R.D.Y. The authority upon which the Houston court founded the In re R.D.Y. opinion does not support the Houston court's conclusion. Specifically, the Houston court cites Capello v. Capello, 922 S.W.2d 218 (Tex.App.--San Antonio 1996, no writ), and Thompson v. Thompson, 827 S.W.2d 563 (Tex.App.—Corpus Christi 1992, writ denied), for the proposition that the trial court may place conditions or restrictions on visitation if they are in the best interest of the child. However, in Cappello, the San Antonio court upheld the trial court's restrictions on the environment in which the visitation would take place, but did not uphold a complete denial of access to the child. Cappello, 922 S.W.2d at 220. In Thompson, the Corpus Christi court actually reversed the trial court for failing to specify times and conditions for the parent to have access to the child. Thompson, 827

S.W.2d at 569.  Clearly, neither of the cases relied on by the Houston court in In re R.D.Y. upheld an order allowing one conservator complete discretion over another conservator's visitation.  Although a judge can rightfully restrict the times and conditions of a parent's visitation, we respectfully disagree with the Houston court's assessment that giving total discretion, unenforceable by contempt, to one conservator constitutes a mere restriction on the conditions of visitation.

Because the trial court's possession order is, effectively, a complete denial of Greg's access to Colt that is unenforceable by contempt, we sustain Greg's second issue.

c.  Rights Granted by Section 153.073[4]

By his third issue, Greg contends that the trial court abused its discretion in denying him parental rights identified in section 153.073 without making any findings that the denial of these rights is in the best interest of Colt.  Leanne did not directly respond to this issue.

The trial court did not make any findings specific to the rights identified by section 153.073, which is a prerequisite to limiting any of those rights.  See § 153.072 (West 2008).  However, Greg's citations to the record to support the trial court's denial of these rights are simply citations to the first page of the Final Decree of Divorce.  A thorough review of the divorce decree reveals that it does not affirmatively deny Greg these rights.  Rather, the decree is silent as to these rights.  As the statute that grants these rights to parent conservators begins "[u]nless limited by court order," and neither the

_____

[4] § 153.073 (West 2008).

12

divorce decree nor any other order limits these rights, we find no support in the record for Greg's characterization that the rights afforded Greg by section 153.073 have been limited.

Having found no limitation on the rights afforded Greg by section 153.073, we overrule Greg's third issue.

### d. Constitutional Rights as a Parent

By his fourth issue, Greg contends that the trial court's rulings in the divorce decree constitute an impermissible infringement on Greg's constitutional rights as a parent. This issue essentially reasserts Greg's second and third issues as constitutional violations. As we have sustained Greg's second issue and have not found any merit in Greg's third issue, Greg's fourth issue need not be addressed and is, therefore, overruled.

## Child Support Issue

By his fifth issue, Greg contends that the trial court abused its discretion in failing to make statutorily mandated findings regarding its child support order. Leanne responds by contending that any failure of the trial court to make specific findings is the result of Greg's failure to provide evidence of his income. Leanne contends that the trial court did its best with the evidence presented to determine Greg's income, and applied the statutory child support guidelines to that assessment of Greg's income.

Section 154.130 requires a trial court to make certain findings when a party files a written request for findings within 10 days after the date of the hearing, a party makes

an oral request for findings in open court, or when the amount of child support ordered varies from the amount that would result by application of the guidelines.  See § 154.130(a) (West Supp. 2010).  In such situations, the trial court must make findings of the net resources of the obligor and obligee, the percentage applied by the court to the obligor's net resources that yields the child support obligation set by the court, and, if applicable, the specific reasons that the amount of child support ordered by the court varies from the amount resulting from application of the guidelines.  See § 154.130(b).  These findings are mandatory and the failure to make them when required constitutes reversible error.  In re S.B.S., 282 S.W.3d 711, 717 (Tex.App.--Amarillo 2009, pet. denied).

In the present case, Greg timely filed a request for findings of fact and conclusions of law.  The trial court found that, from September 2005 through December 2007, Greg's total income was $124,699.00, or $4,618.00 per month.  The trial court further found that Greg's net monthly income during that period was $3,371.80.  In its additional findings of fact and conclusions of law, the trial court found that it intended to follow the statutory guidelines in setting Greg's child support, but, to the extent that the child support ordered deviates from those guidelines, it was due to Greg's failure to provide complete financial information, and the amount ordered is just and appropriate.

We disagree with Greg's contention that the trial court did not make the required finding regarding Greg's net resources.  The amount of resources gained by Greg from September of 2005 through December of 2007 was found by the trial court to have come from farming and ranching operations and oil income specifically.  In addition,

14

there was sufficient evidence presented to support the trial court's finding of Greg's net resources during this period of time. As such, we conclude that the trial court properly found Greg's net resources.

However, a review of the trial court's findings of fact and additional findings of fact makes it clear that the trial court did not make the requisite finding regarding Leanne's net resources, even though there was substantial evidence presented at trial regarding her income throughout the marriage. In addition, the trial court did not identify the percentage applied by the court to the obligor's net resources that yields the child support obligation set by the court.[5] The trial court repeatedly expressed its desire to apply the statutory guidelines to determine Greg's child support obligation, both in open court and in its findings of fact and conclusions of law. While the trial court's explanation for any variance from the statutory guidelines might be sufficient, the absence of the other requisite findings makes an assessment of the trial court's reasoning impossible[6] and constitutes reversible error. See id.

For the foregoing reasons, we sustain Greg's fifth issue.

---

[5] While this percentage may be easily calculated by dividing the monthly child support ordered by the trial court with the trial court's finding that Greg's net monthly resources were $3,371.80, section 154.130(b) mandates that the trial court perform this calculation and enter the results in a finding of fact.

[6] While the trial court's specific reason for deviating from the guidelines would justify an increase in Greg's child support obligation, it appears that the order setting child support may actually be for less than the statutory guidelines would call for. See § 154.125 (West Supp. 2010).

Division of the Community Estate Issues

By his sixth issue and his sole additional issue in his supplemental brief, Greg challenges the trial court's just and right division of the community estate. Specifically, Greg contends that the trial court included corporate property assets and liabilities in the community estate, the evidence was insufficient to support the trial court's valuation of horses awarded to Greg, and the division was so disproportionate that the division was used by the trial court to punish Greg. Leanne responds contending that the purportedly corporate property that was included in the community had been comingled with the community to such an extent that it could no longer be separated from the community. Further, Leanne contends that the trial court did not err in accepting her valuation of the property because her valuation was reasonable and Greg did not offer an alternative valuation. Finally, Leanne contends that the disproportionate division of the community was equitable under the circumstances, and was not used by the trial court as a means to punish Greg.

A trial court is required to divide the property in a just and right manner. § 7.001 (West 2006); Finch v. Finch, 825 S.W.2d 218, 221 (Tex.App.--Houston [1st Dist.] 1992, no writ). The trial court's division of the community estate should be corrected on appeal only if the trial court clearly abused its discretion by ordering a division that is manifestly unjust and unfair. Martin v. Martin, 797 S.W.2d 347, 351 (Tex.App.-- Texarkana 1990, no writ) (citing McKnight v. McKnight, 543 S.W.2d 863, 866 (Tex. 1976)). A presumption arises on appeal that the trial court correctly exercised its discretion in dividing property in a divorce proceeding, and the burden rests on the

16

appellant to show that the record evidences that the division was so disproportionate as to be unjust and unfair. Grossnickle v. Grossnickle, 935 S.W.2d 830, 836 (Tex.App.--Texarkana 1996, writ denied). Because the values of the properties in the community estate are evidentiary to the ultimate issue of whether the trial court divided the properties in a just and right manner, the appellant must be able to show from the evidence in the record that the division is so unjust and unfair as to constitute an abuse of discretion. Finch, 825 S.W.2d at 221. A reviewing court should remand the entire community estate for a new division if it finds reversible error in a specific part of the division that materially affects the trial court's just and right division of the entire community estate. Jacobs v. Jacobs, 687 S.W.2d 731, 732-33 (Tex. 1985); Grossnickle, 935 S.W.2d at 836.

### a. Corporate Property

Whenever the characterization of property is at issue in a divorce, courts are required to presume that any property possessed by either spouse during the marriage is community property. § 3.003 (West 2006); Moroch v. Collins, 174 S.W.3d 849, 856 (Tex.App.—Dallas 2005, pet. denied). To overcome this community presumption, a spouse claiming that specific property is not part of the community must trace the property, which entails establishing the time and means by which the spouse obtained possession of the property. See Moroch, 174 S.W.3d at 856-57.

While a spouse's ownership interest in a corporation can be characterized as either separate or community property, corporate assets and liabilities are owned by the corporation and, absent a finding of alter ego, are not part of the community estate.

Thomas v. Thomas, 738 S.W.2d 342, 343 (Tex.App.—Houston [1st Dist.] 1987, writ denied) (citing McKnight, 543 S.W.2d at 868). Furthermore, while property acquired on the credit of the community is community property, Goodridge v. Goodridge, 591 S.W.2d 571, 574 (Tex.Civ.App.—Dallas 1979, writ dism'd), once separate property character attaches to property, that character does not change because community funds are spent to improve the property. Leighton v. Leighton, 921 S.W.2d 365, 367 (Tex.App.—Houston [1st Dist.] 1996, no writ). Rather, when community funds are used to improve separate property, the appropriate remedy is a claim for community reimbursement. Id. at 368.

Greg contends that the trial court included third-party corporate property in the community estate, and, as a result, the trial court's just and right division of the entire community estate is materially erroneous. However, in referencing the trial court's purported division of corporate liabilities, Greg cites this Court to the trial court's findings of fact and conclusions of law rather than to the divorce decree. Such a citation is necessitated by the fact that the divorce decree does not include any third-party liabilities in the community estate. While finding of fact D(3) includes a $148,000 "balance due on promissory note executed by Lea Acres, Inc.[,] to Charles Craig," and a $553,707.30 "separate property [actually Pioneer] debt for livestock secured by community assets," as community debt, nothing in the divorce decree purports to divide these debts as part of the community.

The divorce decree specifically found that Greg owned Pioneer Land and Cattle Company as his separate property. The divorce decree also awarded all ownership

18

interest in Lea Acres, Inc., to Leanne. Neither party to this suit attempted to characterize the debts of these two corporations as anything other than the property of the respective corporations. As the divorce decree does not divide either of these corporate debts, we conclude that the trial court did not abuse its discretion because it did not include corporate liabilities in the community estate. Consequently, we overrule Greg's contention concerning the division of corporate debts.

In addition, Greg contends that the trial court abused its discretion by including assets owned by Pioneer in the community estate. Specifically, Greg contends that the trial court's award of "All of the horses in his [Greg's] possession, subject to any liens thereon, except as otherwise awarded to wife [Leanne] herein" is the inclusion of corporate property within the community estate. The entire evidentiary basis for Greg's contention is his own testimony that the horses belonged to Pioneer and a brief testimonial statement by Leanne regarding the assets owned by Pioneer as including "the horses." However, Leanne's inventory and appraisement identified "Quarterhorses (130 head – approximately)" as part of the community estate. While certain of the horses involved in this divorce were identified as having been formally owned by Pioneer at one time, no evidence was offered regarding when and the means by which Greg obtained possession of the horses. Further, those horses that were specifically identified as having been formally owned by Pioneer were the same horses which the trial court found Greg had given to Leanne. In fact, the only evidence offered to show the extent of Pioneer's ownership of the horses was Greg's testimonial estimate that Pioneer owned 93 to 97 head of horses. However, Greg did not specify when or how these horses were acquired. Consequently, we conclude that Greg failed to meet his

burden of overcoming the statutory presumption that the property possessed by him during the marriage was community property. See § 3.003; Moroch, 174 S.W.3d at 856-57.

b. Valuation

Next, Greg contends that the trial court abused its discretion in valuing the horses awarded to Greg at $520,000.00, when Greg provided more detailed evidence that the appropriate value of the horses would be, at most, $113,000.00. Leanne responds that Greg cannot complain of the trial court's valuation of the horses because he failed to offer evidence of the appropriate value of the property. The valuation of the horses complained of by this issue is not included in the divorce decree but is, rather, contained in the trial court's findings of fact.

A trial court is not required to file findings of fact listing the value of each item of property owned by the estates of the parties to a divorce suit. Finch, 825 S.W.2d at 221. A trial court is, however, required to divide the property in a just and right manner. Id. The values of the properties are evidentiary to the ultimate issue of whether the trial court divided the properties in a just and right manner. Id. It is the responsibility of the parties to provide the trial judge with a basis upon which to make the division. Id. One who complains of the way the trial court divided the properties must be able to show from the evidence in the record that the division is so unjust and unfair as to constitute an abuse of discretion. Id.

In the present case, the trial court's valuation appears to have come from Leanne's inventory and appraisement that Greg possessed "Quarterhorses (130 head –

approximately)" combined with her testimony that the horses could sell for between $200 at a livestock auction to $7,500 if sold privately with a little training put into the horse. The exact figure of the value of the horses found by the trial court can be obtained if Leanne's estimate of the number of horses (130) is multiplied by one of her estimates of what the horses could be sold for ($4,000). We acknowledge that Greg's testimony was more specific and would support a different valuation. However, a review of Greg's testimony reveals that, as with Leanne's testimony, it was full of estimates and guesses.[7] Because neither party provided the trial court with specific information regarding the number of horses owned by Greg, the trial court was left in the position of assessing the credibility of the parties' estimated values. Because Greg failed to support his valuation of the horses with sufficiently specific evidence, he cannot now complain that the trial court's division of the community estate was so unjust and unfair as to constitute an abuse of discretion. See id. Further, because there was evidence in the record that would support the trial court's finding of fact regarding the valuation of the horses and because the contrary evidence offered by Greg is not sufficiently specific for us to say that the trial court's finding of the value of the horses is so against the great weight and preponderance of the evidence, we cannot say that the trial court abused its discretion in its valuation of the horses. See Dow Chem. Co. v. Francis, 46 S.W.3d 237, 242 (Tex. 2001).

---

[7] By way of example, Greg testified that he possessed "between 93 and 97 horses," that he had "roughly 12 stallions" and "about 40 geldings." Further, Leanne's testimony was that the couple "always" possessed about 130 head of horses throughout the marriage.

21

c. Division of Community as Punishment

Greg next contends that the trial court divided the community in such an unfair manner as to give rise to the conclusion that the division was effectuated as a punishment of Greg. While a trial court may consider the conduct of the spouse at fault for causing a divorce in making its division of the community estate, see Ohendalski v. Ohendalski, 203 S.W.3d 910, 914 (Tex.App.—Beaumont 2006, no pet.), it may not use the division of the community as a means to punish the errant spouse. See Young v. Young, 609 S.W.2d 758, 762 (Tex. 1980).

In the present case, when the corporate debts, which were not divided by the divorce decree, are removed from the valuation of the community estate found in the trial court's findings of fact, the division of the community estate actually greatly favored Greg. Accepting the trial court's valuation of the horses and taking into account the community debts that were divided by the divorce decree, Greg was awarded $418,371 from the community estate, while Leanne was awarded only $94,188. As a result, we conclude that Greg cannot reasonably argue that the trial court punished him through its division of the community estate.

For the foregoing reasons, we overrule Greg's sixth issue and the sole issue presented in his supplemental brief.

Reimbursement Issue

By his seventh issue, Greg contends that the trial court abused its discretion in awarding reimbursement to Leanne's separate estate when insufficient evidence was

22

presented to support her claims for reimbursement. As part of this issue, Greg contends that the trial court's findings of fact regarding the reimbursement award prevent Greg from being able to present the issue on appeal. Leanne responds contending that the evidence was sufficient to establish that, throughout the marriage, Leanne's salary was funneled into Pioneer.

An equitable right of reimbursement arises when the funds or assets of one estate are used to benefit or enhance another estate without receiving some benefit. Vallone v. Vallone, 644 S.W.2d 455, 459 (Tex. 1982). However, one contribution that is nonreimbursable is expenditures for the living expenses of a spouse or child of a spouse. See § 3.409(2) (West 2006). A trial court's award for reimbursement must not be arbitrary or unreasonable, and must be consistent with guiding rules and principles. In re Cassel, No. 07-96-0268-CV, 1997 Tex.App. LEXIS 2641, at *7-*8 (Tex.App.— Amarillo May 19, 1997, no writ) (not designated for publication) (citing Downer, 701 S.W.2d at 241-42). The proper measure of reimbursement is the value of the enhancement to the benefited estate. See § 3.402(d) (West Supp. 2010). The party claiming a right to reimbursement has the burden of proof, and, on appeal of a reimbursement award, we must examine all of the evidence in the record to determine if the challenged award is supported by evidence that is so weak as to be clearly wrong and manifestly unjust. Raymond v. Raymond, 190 S.W.3d 77, 82-83 (Tex.App.— Houston [1st Dist.] 2005, no pet.). If we find reversible error that materially affects the trial court's just and right division of property, we must remand the entire community estate for a new division of the property. Id. at 82.

In the present case, the trial court awarded Leanne a $100,000 reimbursement award. The divorce decree states that, "the community estate and [Leanne's] separate estate are entitled to reimbursement from the community estate and [Greg's] separate estate and that [Leanne] is entitled to a judgment against [Greg] of $100,000.00. The Court further finds that the separate estate of [Greg] is entitled to reimbursement from the community estate." Leanne's inventory and appraisement identifies that the community made payments to or on behalf of Pioneer in an amount of $289,750, and separately makes a claim for reimbursement to the community for payments made by the community for Pioneer of $137,000.[8] The inventory and appraisement also identifies that Leanne paid $32,216.03 to or on behalf of Pioneer and $15,849.01 of community debt from her separate funds derived from an inheritance. Additionally, Leanne offered an exhibit to evidence her expenditure of separate funds to purchase lands. Notably, the $46,695.62 expenditure reflected in this exhibit relates to payments made on a purchase of land from Charles Craig. It appears that this land was purchased by Lea Acres, Inc., and, as such, would not reflect a contribution to either a community asset nor a contribution to Greg's separate estate. See Thomas, 738 S.W.2d at 343. While the record clearly reflects that Leanne made contribution of community assets, specifically her salary, to Greg's separate estate, Pioneer, throughout the marriage, the contribution that is specifically evidenced amounts to approximately $42,000. Certainly, there was evidence that would support that some deposits that were not specifically identified as coming from Leanne's salary did, in fact,

---

[8] No information is provided as to how these two bases for reimbursement were derived nor whether they reflect separate claims for community payments made to or on behalf of Pioneer.

come from that source, but it is also clear that deposits were made into the Pioneer account that were not derived from Leanne's salary.

As it was Leanne's burden to prove her claims for reimbursement, we cannot say, from review of all of the evidence in the record, that the evidence supports her claims for reimbursement in the amounts specified in her inventory and appraisement. Further, while sufficient evidence is contained in the record to support the trial court's award of some reimbursement to Leanne, we can find no evidence that would justify the $100,000 award. Consequently, we conclude that the trial court abused its discretion in awarding Leanne a $100,000 reimbursement claim against Greg. Further, to the extent that the trial court offset any part of the reimbursement claim based on its finding that Greg's separate estate was entitled to reimbursement from the community, the record does not reflect that Greg used funds from his separate estate to contribute to the community in any way other than those that are specifically defined as nonreimburseable. See § 3.409(2).

Because we conclude that the trial court abused its discretion in awarding Leanne $100,000 as reimbursement for the community and her separate estates' contributions to Greg's separate estate, we sustain Greg's seventh issue. Further, because we conclude that an erroneous award of $100,000 in an estate that is worth a net $500,000 materially affects the trial court's just and right division of the community estate, we remand the entire community estate for a new division of the property. See Jacobs, 687 S.W.2d at 732-33; Raymond, 190 S.W.3d at 82.

25

Evidentiary Issue

By his eighth issue, Greg contends that the trial court abused its discretion in "sanctioning" Greg for discovery abuse without notice and hearing. Leanne responds contending that the trial court applied the applicable rule in the appropriate manner.

Greg argues that the trial court excluded certain evidence as a discovery sanction under Texas Rule of Civil Procedure 215. Leanne argues that the trial court simply applied Texas Rule of Civil Procedure 193.6, which provides that a party's failure to make, amend, or supplement a discovery response in a timely manner generally precludes the party from introducing the evidence.

However, a review of the record reflects that the trial court did not exclude the evidence on the basis of either rule. Greg's brief cites his offers of Respondent's Exhibits 3 and 4. After Exhibit 3 was offered, the parties and the court had a discussion regarding whether Greg disclosed this evidence in discovery. Following this discussion, Greg voluntarily withdrew the offer of the exhibit. Following the withdrawal of Exhibit 3, Greg offered Exhibit 4. The parties and the court had a brief discussion regarding the fact that the exhibit, identified as "Figures on Profit & Loss Statement," did not identify the source of the deposits reflected on the exhibit. The trial court sustained the objection stating, "if those aren't complete, then I'll have to sustain her objection." Thus, it is clear that the trial court did not exclude the evidence as a "sanction" against Greg, but rather sustained an objection that the evidence was not complete.

Since Greg does not challenge the actual basis of the trial court's ruling, we overrule Greg's eighth issue.

26

Motion for New Trial

Finally, Greg's ninth issue contends that the trial court erred in denying his motion for new trial. The argument for this issue incorporates Greg's arguments on all of the above issues. As each preceding issue presented by Greg has been addressed above, we need not specifically address Greg's ninth issue.

Conclusion

For the foregoing reasons, we reverse the visitation, child support, and just and right division of the community estate portions of the divorce decree. In all other respects, we affirm the divorce decree. We remand the case to the trial court for further proceedings consistent with this opinion.

Mackey K. Hancock
Justice