**Affirm and Opinion Filed March 17, 2022**



**In the**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-20-01040-CV**

**BYRON ANTHONY PLEASANT, Appellant**
**V.**
**AYANNA RAE BLACK, Appellee**

**On Appeal from the 382nd Judicial District Court**
**Rockwall County, Texas**
**Trial Court Cause No. 1-20-0980**

## MEMORANDUM OPINION

Before Justices Carlyle, Smith, and Garcia
Opinion by Justice Carlyle

Appellant Byron Anthony Pleasant challenges the trial court's two-year protective order prohibiting him from, among other things, committing family violence against Ayanna Rae Black. Mr. Pleasant contends the trial court erred by (1) failing to make a statutorily required finding, (2) awarding relief that "did not conform with" Ms. Black's pleading, and (3) issuing the challenged order based on legally and factually insufficient evidence. We affirm in this memorandum opinion. *See* TEX. R. APP. P. 47.4.

## Background

The parties began a dating relationship in approximately 2012 and have at least one child together.[1] In June 2020, Mr. Pleasant filed a "Suit Affecting the Parent–Child Relationship" in Dallas County.

Ms. Black filed an August 6, 2020 application for a protective order in Rockwall County, where she resides, alleging Mr. Pleasant "has engaged in conduct that constitutes family violence." The application stated it "is brought for the protection of [Ms. Black]" and requested that Mr. Pleasant be prohibited from, among other things, "committing family violence as described in section 71.004 of the Texas Family Code."

The application's attachments included a declaration of Ms. Black in which she stated, among other things, (1) "Byron Pleasant has a long history of being physically and emotionally abusive to me" and (2) "I believe that Byron is likely to continue to assault me and that I need as much protection as the Court and the law will allow."

At the September 1, 2020 hearing on the protective order application, Ms. Black testified she began living with Mr. Pleasant during her senior year of high school. About two months after she moved in, Mr. Pleasant got "upset" with her and became violent for the first time. He hit the side of her face with "open hand slaps."

---

[1] Though Ms. Black gave birth to two children during the parties' dating relationship, the record shows Mr. Pleasant disputes whether paternity has been established as to the second child.

After that, he committed similar abuse against her "numerous times," about "every other week or so."

In 2014, Ms. Black became pregnant with their son, which made Mr. Pleasant "upset" because "he wasn't ready" for a child. Ms. Black testified Mr. Pleasant "punched me directly in my stomach, saying that we needed to have a miscarriage." Then, Mr. Pleasant moved to Michigan and Ms. Black moved back into her parents' home. Their son was born in January 2015.

Mr. Pleasant joined the military in November 2014 and, after his initial training, was stationed in Monterey, California. Ms. Black visited him there four times. She testified Mr. Pleasant committed violence against her each time, including "attacking me by punching me in my arms and in my abdomen, in my stomach," which left "marks and bruises" on her. Subsequently, Mr. Pleasant was stationed in Hawaii for four years and Ms. Black visited him there six to twelve times. On almost every visit, he committed violence against her similar to the Monterey incidents. She stated that though she was afraid of him, she continued to visit him because she "loved him" and "thought that he would change" and they could "be a family."

In August 2019, Mr. Pleasant completed his military commitment. He returned to Texas and moved in with Ms. Black at her parents' home for several months. During that time, he committed physical violence against her "like maybe every other week." She testified, "He was calling me names, he would then punch me in places like, again, arms, in my stomach, slaps towards my face." She stated she wore

long sleeves and jackets to cover the bruises on her arms. The trial court admitted into evidence without objection several photographs that Ms. Black described as showing bruises on her arms caused by Mr. Pleasant's violence. Ms. Black stated her mother took those photographs in October 2019 "because she was worried."

In early 2020, Ms. Black and Mr. Pleasant moved to a Dallas apartment. Ms. Black stated that during their time there, Mr. Pleasant committed violence against her two or three times a week. At one point, he choked her with his hands and she "blacked out for a second." In about March 2020, Ms. Black realized she was pregnant again. Because Mr. Pleasant had "said he would lose his mind" if she became pregnant again, she was scared and told him she was not pregnant.

The day after Father's Day 2020, she began having contractions but thought they were "fake." When the contractions became more severe, she locked herself in the apartment's bathroom, where she delivered a daughter. She stated Mr. Pleasant "knocked down the door, had seen that I had delivered the baby at home, and he started yelling." He broke her phone by throwing it. Then, paramedics arrived and took her and the baby to the hospital. Since being discharged from the hospital, she has lived at her parents' home. The trial court admitted into evidence without objection a photograph of Ms. Black's broken phone.

Ms. Black also testified:

Q. . . . Are you—are you in fear, Ayanna, of Byron Pleasant?
A. Yes, I am.

Q. Do you believe you need a protective order granted to protect you in the future against Byron Pleasant's conduct?
A. Yes, I do.
Q. Do you believe that, based on the history and conduct of Byron Pleasant, that he's likely to become assaultive or abusive again in the future?
A. Yes.
. . . .
Q. And, so, you're going to have to continue to have some interaction with him on some level and you want a protective order to prevent any future acts of domestic violence; is that correct?
A. Yes, that's correct.

On cross-examination, Ms. Black stated she did not call police or seek medical attention regarding any of the alleged incidents, nor did she tell her family or friends about the alleged abuse. She also stated that on the day before Father's Day 2020, she gave Mr. Pleasant a Father's Day card in which she had written "thank you so much for being there for [their son] and I, you are truly a great daddy, and I appreciate everything you do, Babe. Have a great day—have a great daddy day." The trial court admitted a copy of that card into evidence without objection.

Ms. Black's mother, Francine Black, testified the parties lived with her and her husband after Mr. Pleasant moved back to Texas in 2019. Francine stated she "knew that they would argue, verbally," but she "had no knowledge" of them having "physical fights" until she saw bruises on Ms. Black's arm in October 2019. Francine saw the bruises "by accident" when Ms. Black took off the sweater she usually wore. Ms. Black's "entire arm was bruised." Francine photographed those bruises. She stated Ms. Black never told her about any instances of violence before or after that

time. When asked whether she believes Ms. Black needs a protective order against Mr. Pleasant "to prevent future violence," Francine stated, "Yes, I do."

Mr. Pleasant testified that during their dating relationship, he and Ms. Black had only one "physical altercation," which consisted of her hitting him in the face with a closed fist during an argument about a mattress they were purchasing. He introduced text messages regarding that altercation into evidence without objection. He testified he has never hit, slapped, choked, or physically assaulted or abused Ms. Black. He stated (1) he did not cause the bruises in the photographs and does not know how Ms. Black got those bruises and (2) Ms. Black lied to him about both of her pregnancies.

During closing, Ms. Black's counsel argued:

[Ms. Black] offered credible testimony about a history of violence between her and Mr. Pleasant. We've got the picture of the bruises and pictures of the broken phone and a pattern of behavior that shows that not only has family violence occurred in the past but is likely to occur again in the future.

Counsel for Mr. Pleasant responded, "Your Honor, I would—I know you'll be surprised—disagree with that statement, but we—what the evidence has shown is that [Ms. Black] has a history of trouble with the truth."

At the hearing's conclusion, the trial court stated, "Based on the overall testimony and based on the information that are in the applicant's Exhibits . . . , the Court is going to make a finding that family violence has occurred. The request for protective order is granted . . . ."

Before an order was signed, Mr. Pleasant obtained new counsel and filed a September 9, 2020 "Motion to Reconsider Ruling on Application for Protective Order and Special Exceptions." He asserted, among other things:

> [Ms. Black's] *Application for Protective Order* is defective because she failed to plead that family violence is likely to occur in the future as required by Tex. Fam. Code § 81.001. [Ms. Black] did not plead for a finding that family violence is likely to occur in the future, therefore the Court should not have found that family violence was likely to occur in the future.

The trial court signed a September 11, 2020 "Final Protective Order" that stated in part, "The Court finds that family violence has occurred and that family violence is likely to occur in the future." At Mr. Pleasant's request, the trial court also issued October 7, 2020 findings of fact and conclusions of law, which included:

**FINDINGS OF FACT**

. . . .

4. Byron Pleasant has committed one or more acts of family violence against Ayanna Rae Black . . . .
5. Family violence by Byron Pleasant against Ayanna Black is likely to occur in the future.

**CONCLUSIONS OF LAW**

. . . .

3. Family violence by Byron Pleasant has occurred against Ayanna Rae Black.
4. Family violence is likely to occur in the future.

Mr. Pleasant filed objections to the trial court's findings and conclusions and requested "additional or amended" findings of fact and conclusions of law. He also filed a motion for new trial, contending, among other things, (1) the trial court "failed to make a finding that family violence was likely to occur in the future as required

by Tex. Fam. Code § 85.001(a)" and (2) the application for protective order "was defective because [Ms. Black] failed to plead that family violence was likely to occur in the future as required by Tex. Fam. Code § 81.001."

After a hearing, the trial court denied Mr. Pleasant's motion for new trial. The trial court did not issue additional or amended findings of fact and conclusions of law.

**Standard of review and applicable law**

We review questions of statutory interpretation de novo. *Sommers v. Sandcastle Homes, Inc.*, 521 S.W.3d 749, 754 (Tex. 2017). When construing statutes, our primary objective is to give effect to the Legislature's intent. *Galbraith Eng'g Consultants, Inc. v. Pochucha*, 290 S.W.3d 863, 867 (Tex. 2009). We presume legislative intent is reflected in the words of the statute and accord those words their fair meaning. *See Sommers*, 521 S.W.3d at 754. We assume that "lawmaker-authors chose their words carefully, both in what they included and in what they excluded." *Id*.

"Family violence" in a dating relationship includes "an act, other than a defensive measure to protect oneself," that "is intended to result in physical harm, bodily injury, assault, or sexual assault or that is a threat that reasonably places the victim or applicant in fear of imminent physical harm, bodily injury, assault, or sexual assault." TEX. FAM. CODE §§ 71.004, 71.0021. Under family code § 81.001, "[a] court shall render a protective order as provided by Section 85.001(b) if the

court finds that family violence has occurred and is likely to occur in the future." *Id.*

§ 81.001. Section 85.001 states:

> (a) At the close of a hearing on an application for a protective order, the court shall find whether:
>> (1) family violence has occurred; and
>> (2) family violence is likely to occur in the future.
> (b) If the court finds that family violence has occurred and that family violence is likely to occur in the future, the court:
>> (1) shall render a protective order as provided by [the family code] . . . .

*Id.* § 85.001.

We review challenges to family violence protective orders for legal and factual sufficiency. *See In re E.A.K.*, No. 05-16-00724-CV, 2017 WL 2391722, at *3 (Tex. App.—Dallas June 1, 2017, no pet.) (mem. op.). When addressing a legal sufficiency challenge, we view the evidence in the light most favorable to the challenged finding, crediting favorable evidence if a reasonable factfinder could and disregarding contrary evidence unless a reasonable factfinder could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). A legal sufficiency challenge to a family violence protective order may be sustained only when "(1) the record discloses a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence establishes conclusively the opposite of the vital fact." *In re Frasure*, No. 05-13-01667-CV, 2015 WL 459223, at *4 (Tex. App.—Dallas Feb. 4, 2015, no pet.)

(mem. op.); *see also City of Keller*, 168 S.W.3d at 827 ("The final test for legal sufficiency must always be whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review.").

"When an appellant challenges the factual sufficiency of the evidence on an issue, we consider all the evidence supporting and contradicting the finding." *Fulgham v. Fischer*, 349 S.W.3d 153, 157 (Tex. App.—Dallas 2011, no pet.) (citing *Plas-Tex, Inc. v. U.S. Steel Corp.*, 772 S.W.2d 442, 445 (Tex. 1989)). "We set aside the finding for factual insufficiency only if the finding is so contrary to the evidence as to be clearly wrong and manifestly unjust." *Id*. (citing *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986) (per curiam)). In a bench trial, the trial court, as factfinder, is the sole judge of the credibility of the witnesses. *Id*. The factfinder may decide to believe one witness and disbelieve another. *E.g., Bowling v. Dahlheimer*, No. 05-16-01196-CV, 2017 WL 5166998, at *2 (Tex. App.—Dallas Nov. 7, 2017, pet. denied) (mem. op.) (citing *City of Keller*, 168 S.W.3d at 819). We will not substitute our judgment for that of the trial court merely because we might reach a different conclusion. *In re Frasure*, 2015 WL 459223, at *5.

**Analysis**

In his first issue, Mr. Pleasant contends the trial court "failed to properly construe the requirements of Tex. Fam. Code § 85.001(a) and failed to make a finding that family violence is likely to occur in the future." According to Mr. Pleasant, though the trial court "ruled as to prong one" of § 85.001(a) at the hearing

and stated "[t]he request for protective order is granted," the court "made no other findings" before concluding the trial and thus "did not make the statutorily required findings at the close of the hearing." He asserts this omission "violated not only Section 85.001(a) of the Texas Family Code, but also Section 85.001(b)," which allows for a protective order only if both findings are made.

The record shows Mr. Pleasant made no objection at the time of the alleged omission. *See* TEX. R. APP. P. 33.1(a). Even assuming without deciding that this issue was properly preserved for appellate review, Mr. Pleasant cites no authority, and we have found none, interpreting section 85.001(a) as requiring trial courts to orally announce that section's required findings at the protective order hearing. In fact, at least two Texas courts of appeals have specifically declined to adopt that interpretation. In doing so, the Thirteenth District Court of Appeals reasoned:

> While §§ 85.001(c) and (d) of the Texas Family Code require the court to make written findings in certain protective orders, § 85.001(a) does not specify the manner in which a court is to provide its findings. Title 4 of the Texas Family Code is remedial in nature, and we are to broadly construe its provisions to "effectuate its humanitarian and preventative purposes." The statute in question does not expressly forbid a court from reducing its findings to writing after a hearing, nor does it require the findings be expressly made during the hearing or in the protective order. We note that no manner of rendition is prescribed by the statute and we decline to hold that § 85.001(a) requires a court to orally render the required family violence findings at a protective order hearing.

*Cox v. Walden*, No. 13-20-00283-CV, 2022 WL 120014, at *2 n.3 (Tex. App.—Corpus Christi–Edinburg Jan. 13, 2022, no pet.) (mem. op.) (citations omitted);

*accord In re M.I.W.*, No. 04-17-00207-CV, 2018 WL 1831678, at *2 (Tex. App.—San Antonio Apr. 18, 2018, no pet.) (mem. op.).

Based on that same reasoning, we too "decline to hold that § 85.001(a) requires a court to orally render the required family violence findings at a protective order hearing." *Cox*, 2022 WL 120014, at *2 n.3. Here, the trial court (1) stated at the hearing that "[t]he request for protective order is granted" and (2) included past and future family violence findings in both its written order and its findings of fact and conclusions of law.[2] We decline to conclude the trial court failed to comply with section 85.001's requirements. *See id*.; *In re M.I.W.*, 2018 WL 1831678, at *2.

In his second issue, Mr. Pleasant asserts the trial court "erred in awarding relief that did not conform with [Ms. Black's] application because [Ms. Black] failed to plead that family violence was likely to occur in the future." Mr. Pleasant contends he preserved this complaint for appellate review by asserting it in his September 9, 2020 motion to reconsider and special exceptions. He also contends "the likelihood of future violence was not tried by consent" because "[Ms. Black] presented no evidence that family violence was likely to occur in the future" and "[t]he conclusory questions of [Ms. Black's] counsel without presentation of evidence were not calculated to elicit an objection from [Mr. Pleasant's] trial counsel."

---

[2] Mr. Pleasant's request for additional or amended findings of fact and conclusions of law did not contain any objection or request regarding the timing of the trial court's future family violence finding or its non-announcement at trial.

Even assuming without deciding that Ms. Black's application was deficient for not pleading that family violence was likely to occur in the future, trial by consent can cure a pleading defect. *See* TEX. R. CIV. P. 67. An unpled issue may be deemed tried by consent when evidence about the issue is developed under circumstances indicating both parties understood the issue was in the case and the opposing party did not make an appropriate objection. *E.g., Johnson v. Structured Asset Servs., LLC*, 148 S.W.3d 711, 719 (Tex. App.—Dallas 2004, no pet.). An issue is not tried by consent merely because evidence regarding it is admitted. *Bos v. Smith*, 556 S.W.3d 293, 306–07 (Tex. 2018). "We must examine the record not for evidence of the issue, but rather for evidence of trial of the issue." *Id*. at 307. If evidence is relevant to pled issues as well as unpled issues, there is no trial by consent because the evidence would not be calculated to draw an objection. *Id*. Our standard for reviewing a trial court's ruling that an unpled issue was tried by consent is abuse of discretion. *See, e.g., In re C.E.C.*, No. 05-17-01482-CV, 2018 WL 3062454, at *8 (Tex. App.—Dallas June 1, 2018, no pet.) (mem. op.).

Here, the application stated it "is brought for the protection of [Ms. Black]" and requested that Mr. Pleasant be prohibited from, among other things, "committing family violence as described in section 71.004 of the Texas Family Code." Thus, at the very least, the pleading provided notice that future violence by Mr. Pleasant against Ms. Black was a concern. At trial, Ms. Black and her mother both testified

without objection that they believe Ms. Black needs a protective order to protect her from Mr. Pleasant's future conduct. Ms. Black also stated:

> Q. Do you believe that, based on the history and conduct of Byron Pleasant, that he's likely to become assaultive or abusive again in the future?
> A. Yes.
>  . . . .
> Q. And, so, you're going to have to continue to have some interaction with him on some level and you want a protective order to prevent any future acts of domestic violence; is that correct?
> A. Yes, that's correct.

At closing, Ms. Black's counsel argued in part that the likelihood of future family violence had been shown, and Mr. Pleasant's counsel disagreed.

Mr. Pleasant does not explain, and the record does not show, how this testimony directly addressing the likelihood of future family violence was not evidence regarding such,[3] or how that testimony was relevant to what he contends was the sole family violence allegation pleaded—that family violence has occurred in the past—and thus "not calculated to elicit an objection." On this record we conclude the trial court did not abuse its discretion to the extent it determined that the likelihood of future family violence was tried by consent. *See Johnson*, 148 S.W.3d at 719.

---

[3] To the extent Mr. Pleasant's second issue can be construed to include a legal sufficiency challenge, our analysis below regarding his third issue addresses his evidentiary sufficiency complaints.

In his third issue, Mr. Pleasant asserts the trial court "abused its discretion by issuing a protective order based on legally and factually insufficient evidence." Mr. Pleasant contends:

> [Ms. Black's] testimony failed to articulate competent evidence beyond the bare listing of allegations of "family violence," and [Mr. Pleasant] denied all allegations. Without testimony or other evidence about the circumstances surrounding the alleged incidents of "family violence," the evidence is factually and legally insufficient to support the required finding that family violence occurred and is likely to occur in the future.

Mr. Pleasant argues (1) "none of the testimony given by [Ms. Black] is corroborated by any other evidence or testimony"; (2) "the evidence [Ms. Black] provided was no more than a mere scintilla"; (3) Ms. Black "testified that she lies, thereby calling into question the weight and credibility of her entire testimony"; (4) the evidence as a whole "establishes conclusively that family violence did not occur"; and (5) "[g]iven that unsubstantiated stories were the sole basis for [Ms. Black's] claims of family violence, it is clear the trial court could not find that family violence is likely to occur in the future."

As described above, Ms. Black testified Mr. Pleasant (1) began committing physical violence against her several months after they moved in together and continued doing so throughout their dating relationship; (2) caused "marks and bruises" on her by punching her arms and stomach; (3) punched her in the stomach when she was pregnant with their son; and (4) at one point in 2020, caused her to "black out" by choking her with his hands. Ms. Black's mother testified she became

aware of the parties' "physical fights" when she saw bruises on Ms. Black's arm in October 2019. Photographs of those bruises were admitted into evidence. Both Ms. Black and her mother testified they believe Ms. Black needs a protective order to protect her from Mr. Pleasant's future conduct. Ms. Black also stated that based on Mr. Pleasant's past conduct, she believes he is likely to become assaultive or abusive again in the future.

Mr. Pleasant cites no authority to support his contention that the evidence of past family violence here is too "bare" to be credited by a reasonable factfinder. Under the appropriate standard of review, we reject that contention. *See In re Frasure*, 2015 WL 459223, at *4, 6; s*ee also In re Collier*, 419 S.W.3d 390, 397 (Tex. App.—Amarillo 2011, no pet.) (concluding trial court's finding of past family violence was sufficiently supported by Mother's testimony of alleged incidents refuted by Father and not corroborated by any other source, even though Mother allegedly had "tendency to exaggerate"). We conclude more than a scintilla of evidence supports the trial court's finding that family violence by Mr. Pleasant has occurred. Thus, Mr. Pleasant's legal sufficiency challenge regarding that finding is without merit. *See In re Frasure*, 2015 WL 459223, at *4, 6.

As to factual sufficiency regarding the past family violence finding, the trial court, as factfinder, was free to accept or reject all or part of each witness's testimony. *See id*. at *6. Though there was contradictory evidence at trial, the evidence supporting the trial court's finding of past family violence is not so weak or so

contrary to the overwhelming weight of all the evidence as to be clearly wrong or unjust. *See id.* (concluding evidence was factually sufficient to support finding of past family violence even where there was no other evidence of altercation wife described and husband contended wife had perjured herself).

A trial court can reasonably conclude future violence is likely to occur based on testimony showing a pattern of violent behavior. *In re F.K.M.*, No. 05-11-00276-CV, 2012 WL 939271, at *3 (Tex. App.—Dallas Mar. 19, 2012, no pet.) (mem. op.); *see also In re Frasure*, 2015 WL 459223, at *6 ("In cases involving family violence protective orders, evidence that a person has engaged in abusive conduct in the past permits an inference that the person will continue this behavior in the future."). Here, Ms. Black testified Mr. Pleasant committed violence against her on multiple occasions over nearly eight years. As described above, the trial court could decide to believe one witness and disbelieve another. On this record, we conclude the evidence is both legally and factually sufficient to support a finding that family violence is likely to occur in the future. *See In re F.K.M.*, 2012 WL 939271, at *3; *accord In re E.A.K.*, 2017 WL 2391722, at *3 ("Based on E.A.K.'s testimony of multiple instances of past family violence, the trial court could reasonably infer family violence was likely to occur in the future.").

We affirm the trial court's protective order.

_____

_/Cory L. Carlyle//_
CORY L. CARLYLE
JUSTICE



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

BYRON ANTHONY PLEASANT, Appellant

No. 05-20-01040-CV      V.

AYANNA RAE BLACK, Appellee

On Appeal from the 382nd Judicial District Court, Rockwall County, Texas
Trial Court Cause No. 1-20-0980.
Opinion delivered by Justice Carlyle. Justices Smith and Garcia participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee AYANNA RAE BLACK recover her costs of this appeal from appellant BYRON ANTHONY PLEASANT.

Judgment entered this 17th day of March, 2022.